**Affirmed and Majority and Dissenting Opinions filed May 30, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00333-CV

**SHEILA BAILEY, Appellant**

**V.**

**AMAYA CLINIC, INC. AND DR. DAVID W. POWELL, Appellees**

## NO. 14-12-00335-CV

**DR. DAVID W. POWELL, Appellant**

**V.**

**SHEILA BAILEY, Appellee**

## NO. 14-12-00354-CV

**AMAYA CLINIC, INC., Appellant**

**V.**

**SHEILA BAILEY, Appellee**

**M A J O R I T Y    O P I N I O N**

This is a health care liability case governed by the Texas Medical Liability Act.[1]  Each party has separately appealed from the trial court's order sustaining in part and overruling in part Amaya Clinic, Inc. and Dr. David W. Powell's objections to three expert reports served by Sheila Bailey.  We affirm.

## Background

Powell, a dermatologist, treated Bailey at Amaya Clinic for weight loss; this treatment included a Zerona Laser liposuction procedure.[2]  As alleged, after Bailey received the laser treatment, an employee at Amaya Clinic directed Bailey to stand on a vibrating exercise machine, the Vibratrim VT300.  After Bailey mounted the machine, the employee allegedly started it, but then asked Bailey to step down and straddle the base of the machine.  As Bailey attempted to step down, she allegedly fell, fracturing one ankle and spraining the other.[3]

Bailey filed suit against Powell and Amaya Clinic on November 10, 2010, bringing claims for negligence and gross negligence.  Bailey served Powell and Amaya Clinic with the expert report of Dr. William Francis, Jr. on February 2, 2011.  Powell and Amaya Clinic objected to Francis's report and moved to dismiss

---

[1] Tex. Civ. Prac. & Rem. Code §§ 74.001-.507.  All references to the Act are to these provisions.

[2] According to Bailey's expert Dr. William Francis, Jr., the Zerona Lipo Laser is designed to "emulsify adipose tissue which then releases into the interstitial space.  The excess fat is passed through the body during its normal course of detoxification."

[3] It is unclear whether the machine was in operation when Bailey stepped down.

the case. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b). The trial court sustained the objections and granted Bailey 30 days to amend the report. *See id.* § 74.351(c). Bailey served Powell and Amaya Clinic with Francis's amended expert report and the expert reports of Drs. Robert L. Bell and Seth J. Orlow on May 10, 2011.

Powell and Amaya Clinic again objected and moved to dismiss the case. They contended the reports were inadequate because the experts (1) did not establish their qualifications to opine regarding the standards of care for a dermatologist like Powell or a clinic like Amaya Clinic or for using the Vibratrim machine or the Zerona Lipo Laser machine; (2) failed to articulate a fair summary of the experts' opinions regarding the applicable standards of care, the manner in which those standards were breached by Powell and Amaya Clinic, and the causal relationship between any breach and the injury and damages claimed; and (3) attempted to apply a single standard of care to Powell and Amaya Clinic. The trial court overruled the objections in part but sustained the objections to Orlow's report in toto, to "Bell's opinions that . . . [']Powell's actions in requiring . . . Bailey to use the Vibratrim machine caused and/or contributed to . . . Bailey's injuries,'" and to "Francis' opinions . . . regarding the effectiveness of the Vibratrim machine and that . . . [']Powell and Amaya Clinic used a machine that is not designed for commercial use.'"[4] The trial court did not dismiss the case. The

---

[4] The trial court also stated in the order,

Unless . . . Bell has knowledge of any evidence that the Vibratrim machine actually was "on" (that is, on and vibrating, he needs to correct his report to limit his opinion to the fact that it is below the standard of care for . . . Powell to allow or direct an obese patient with ambulation problems to mount or dismount an exercise machine such as the Vibratrim machine. He then also needs to correct his report to limit his opinion in the same way regarding the standard of care for the staff of Amaya Clinic. . . . If that is his opinion, and that allowing or directing . . . Bailey to mount or dismount the machine caused or contributed to . . . Bailey losing her balance and falling, he may so state.

. . . .

3

parties agree that the effect of the order was a denial of the motion to dismiss.[5]

## Discussion

Powell and Amaya Clinic bring four issues, asserting the trial court erred in denying the motion to dismiss while acknowledging deficiencies in the expert reports and because Francis and Bell (1) did not articulate a fair summary of their opinions regarding the applicable standards of care and the causal relationship between any breach of the standards of care and the injury and damages claimed; (2) did not establish their qualifications to opine regarding the standards of care applicable to Powell or Amaya Clinic; and (3) applied a single standard of care to

---

Unless . . . Francis has knowledge of any evidence in this case that the Vibratrim machine actually was "on" (that is, on and vibrating), he needs to remove those portions of his report and limit his opinion to the fact that it is below the standard of care for . . . Powell to allow or direct an obese patient with ambulation problems to mount or dismount an exercise machine such as the Vibratrim machine. He then needs to limit (and separate out) his standard of care opinions about the staff of Amaya Clinic . . . in the same way.

. . . .

Further, while I believe . . . Francis' causation opinions are a good faith effort, I also believe Defendants should have more notice of the basis of . . . Francis' causation opinions regarding . . . Bailey's "internal ankle derangement with associated ankle instability in both left and right ankles, left and right plantar fasciitis, left and right sinus tarsi syndrome, and left and right tarsal tunnel syndrome."

[5] The dissent would dismiss Powell and Amaya Clinic's appeals on the basis that the trial court only sustained their objections to the expert reports under section 74.351(a), but did not deny "all or a part" of the motion to dismiss under section 74.351(b). Powell and Amaya Clinic filed a joint motion entitled "Supplemental Objections to the [Expert] Reports and [Doctors'] Qualifications . . . and Joint Motion for Dismissal pursuant to [Section] 74.351." Under their "Objections" heading, they complained that Francis, Bell, and Orlow were not qualified to opine on the standards of care or causation, failed to allege separate standards of care as to each defendant, and that the reports are conclusory. The prayer in the motion only asked the trial court to dismiss the case with prejudice "pursuant to [section] 74.351(b)" and did not ask for any relief under subsection (a). Although the trial court sustained some of the objections, it did not dismiss the case. We interpret this as a denial of relief sought by a motion under section 74.351(b) for which an interlocutory appeal is available. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(9).

4

Powell and Amaya Clinic. In four issues, Bailey argues Francis, Bell, and Orlow are qualified experts and the expert reports represent a good faith effort to comply with the statutory requirements for an expert report.

The Act entitles a defendant to dismissal of a health care liability claim if he is not served, within 120 days of the date suit was filed, with an expert report showing that the claim has merit. Tex. Civ. Prac. & Rem. Code § 74.351(b); *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011). The trial court's refusal to dismiss may be immediately appealed. Tex. Civ. Prac. & Rem. Code § 51.014(a)(9); *Scoresby*, 346 S.W.3d at 549. The trial court's granting of relief sought under a motion challenging the adequacy of an expert report also may be immediately appealed.[6] Tex. Civ. Prac. & Rem. Code § 51.014(a)(10). We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875, 878 (Tex. 2001); *Group v. Vicento*, 164 S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Similarly, we review a trial court's determination of whether a physician is qualified to opine in a health care liability case under an abuse of discretion standard. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006) (per curiam); *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Larson*, 197 S.W.3d at 304–05; *see also Jelinek*, 328 S.W.3d at 539.

---

[6] Though the trial court did not grant the motion to dismiss, it sustained several of Powell and Amaya Clinic's objections to the expert reports, thus granting some of the relief sought in the motion to dismiss. Accordingly, Bailey, as well as Powell and Amaya Clinic, was allowed to appeal the trial court's order. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(10).

5

The Act specifies requirements for an adequate report and mandates "an objective good faith effort to comply" with the requirements. Tex. Civ. Prac. & Rem. Code § 74.351(*l*), (r)(6); *Scoresby*, 346 S.W.3d at 549. It also authorizes a trial court to give a plaintiff who meets the 120-day deadline an additional 30 days to cure any deficiencies in the report. Tex. Civ. Prac. & Rem. Code § 74.351(c); *Scoresby*, 346 S.W.3d at 549. When determining if a good faith effort has been made, the trial court is limited to the four corners of the report and cannot consider extrinsic evidence. *See Jelinek*, 328 S.W.3d at 539; *Palacios*, 46 S.W.3d at 878.

An expert must establish that he is qualified to provide an acceptable report. Tex. Civ. Prac. & Rem. Code § 74.351(r)(5)(B). Qualifications must appear in the expert report and cannot be inferred. *Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Additionally, an expert report must provide a fair summary of the expert's opinions regarding (1) the applicable standard of care; (2) the manner in which the care provided failed to meet that standard; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); *Palacios*, 46 S.W. 3d at 879. In compliance with these standards, the expert report must incorporate sufficient information to inform the defendant of the specific conduct the plaintiff has called into question and provide a basis for the trial court to conclude the claims have merit. *Patel v. Williams*, 237 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Palacios*, 46 S.W.3d at 879). A report may not merely contain the expert's conclusions about these elements. *Jelinek*, 328 S.W.3d at 539; *Palacios*, 46 S.W.3d at 879. The expert must explain the basis for his statements and link his conclusions to the facts. *Jelinek*, 328 S.W.3d at 539. However, a plaintiff need not present all the evidence necessary to litigate the merits of his case. *Palacios*, 46 S.W.3d at 879;

6

*Patel*, 237 S.W.3d at 904.  The report may be informal in that the information need not fulfill the same requirements as the evidence offered in a summary judgment proceeding or at trial.  *Palacios*, 46 S.W.3d at 879; *Patel*, 237 S.W.3d at 904.

## A. *Qualifications*

In their third issue, Powell and Amaya Clinic complain that the Francis and Bell expert reports do not establish that Francis and Bell are qualified to render opinions regarding the standards of care applicable to Powell and Amaya Clinic. In her third issue, Bailey argues Francis, Bell, and Orlow are qualified to render opinions "as to the standards of care and causation for weight loss treatment of an obese patient who has ambulatory problems and is ordered to use an unstable and vibrating platform."  The trial court implicitly denied Powell and Amaya Clinic's objections to Francis's and Bell's qualifications and sustained the objections to Orlow's qualifications.[7]

To be qualified to provide opinion testimony regarding whether a physician departed from the accepted standard of medical care, the expert must satisfy section 74.401.  *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(5)(A).  Under section 74.401, the expert must be a physician who:

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*Id.* § 74.401(a).

---

[7] The order did not address Francis's and Bell's qualifications but only sustained Powell and Amaya Clinic's objections to certain of Bell's causation opinions.  The trial court sustained all of Powell and Amaya Clinic's objections to the Orlow report.

"In determining whether a witness is qualified on the basis of training or experience" to offer an expert opinion regarding the applicable standards of medical care,

> the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine in rendering medical care services relevant to the claim.

*Id*. § 74.401(c).

To be qualified to provide opinion testimony regarding whether a health care provider departed from the accepted standard of health care, an expert must satisfy section 74.402. *See id*. § 74.351(r)(5)(B). Section 74.402 lists three specific qualifications an expert witness must possess to provide opinion testimony on how a health care provider departed from accepted standards of health care. The expert must:

> (1) [be] *practicing health care* in a field of practice that involves the *same type of care or treatment as that delivered* by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> (2) [have] knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) [be] *qualified on the basis of training or experience* to offer an expert opinion regarding those accepted standards of health care.

*Id*. § 74.402(b) (emphases added).

The above emphasized terms are specifically defined in subsections (a) and (c) of section 74.402. "Practicing health care" includes:

> (1) training health care providers in the same field as the defendant

8

health care provider at an accredited educational institution; or

(2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.

*Id*. § 74.402(a). To determine whether an expert is "qualified on the basis of training or experience," a court must consider whether the expert:

(1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

(2) is actively practicing health care in rendering health care services relevant to the claim.

*Id*. § 74.402(c).

**Francis's qualifications**. Powell and Amaya Clinic argue Francis was required to show "his expertise in the field of dermatology or the treatment of patients such as Sheila Bailey in a weight-loss clinic setting, the use of the Vibratrim VT300 or the techniques employed by Dr. Powell to facilitate excretion of fat cells following the use of a Zerona Lipo Laser for non-invasive liposuction." However, Powell and Amaya Clinic frame the standard too narrowly. The offering party is required to establish only that the expert has "knowledge, skill, experience, training, or education" regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996); *Pokluda*, 283 S.W.3d at 118.

Francis treated Bailey for the injuries that form the basis of her claims. Francis is a board-certified orthopedic surgeon who has practiced as an orthopedic surgeon for thirty years in private practice and hospital settings and a Clinical Assistant Professor in the Division of Orthopedic Surgery at Baylor College of Medicine and the University of Texas Medical Branch-Houston. He is also the

9

Medical Director for Greater Houston Spine Clinic and Allied Diagnostics and a former Medical Director of West Side Clinic, an orthopedic rehabilitation center in which he oversaw a medical staff who worked with patients during exercise and rehabilitation, including patients who used exercise equipment. He also directs the non-operative care of patients for Greater Houston Neurosurgery Center, which includes physical therapy and recovery from injuries or surgery. He states in the report, "I am both aware and monitor the various modalities, and the use of exercise equipment, such as treadmills, weight-bearing exercise machines, bicycles and other standard gym equipment."

> Francis states in his report,
>
> Through my training, experience and teaching, I am familiar with the standards of care for rehabilitation and treatment of orthopedic injuries, specifically, the standards of care relating to the orthopedic care, treatment and rehabilitation for a patient who has difficulty ambulating and, in general, patient rehabilitation in both clinical and hospital settings with exercise equipment. I am also familiar with the standards of care for supervising staff members who work with patients during their use of exercise machines.

Bailey's claims are based on the allegation that she, a person with ambulation problems, injured her ankles when Powell directed her to use and Amaya Clinic employees placed her on an exercise machine after a weight-loss procedure. Thus, Francis, as a board-certified orthopedic surgeon who works with patients using exercise equipment and supervises health care professionals who do the same, is eminently qualified to opine as to the standards of care applicable to Powell and Amaya Clinic. *See Burrell*, 230 S.W.3d at 761 (upholding trial court's ruling that expert was qualified to opine that hospital's substandard care caused patient's decubitus ulcers where, over the course of his career, he had treated patients with decubitus ulcers and trained nurses and other personnel in proper techniques to

10

prevent this condition); *see also Group*, 164 S.W.3d at 734 (holding a doctor's statement that he has knowledge of the accepted standard of care for the injury or illness at issue satisfies the expert qualification requirement regarding accepted chiropractic standards of care).

**Bell's Qualifications**. Powell and Amaya Clinic similarly argue that Bell "demonstrates no skill, education or training concerning the treatment of patients such as Sheila Bailey in a weight-loss clinic setting, the use of the Vibratrim VT300 or the techniques employed by Dr. Powell and Amaya Clinic vis-à-vis its employees in facilitating excretion of liquefied adipose (fat cells) following the use of a Zerona Laser for non-invasive liposuction." Again, Powell and Amaya Clinic have drawn the standard too narrowly. *See Pokluda*, 283 S.W.3d at 120 ("We have found no authority for the proposition that a surgeon must have performed exactly the same surgery as the defendant physician in order to render an expert opinion.").

Bell is a board-certified surgeon, the Director of Bariatric Surgery at Yale University School of Medicine, and an Associate Professor of Surgery in the Section of Gastrointestinal Surgery. He treats obese patients in surgical, clinical, and academic settings. He states in his report, "I am familiar with the standards of care for the treatment of obesity and weight loss by a physician and staff, such as nurses and therapists, through education, teaching, clinical experience and post-surgical care and rehabilitation through exercise." Part of Bailey's weight loss treatment allegedly involved rehabilitation through exercise on the Vibratrim machine. An expert is qualified if he is board certified and "is actively practicing medicine in rendering medical care services *relevant* to the claim." *Id*. (citing Tex. Civ. Prac. & Rem. Code § 74.401(c) (emphasis added)). Bell satisfies this requirement. *See id*.

11

**Orlow's qualifications**. Bailey argues Orlow is qualified to opine as to the training and standards of care for a dermatologist such as Powell.[8] Orlow opines that "dermatologists are trained in the care and treatment of the skin and skin diseases" and that a dermatologist's training and education do not include "the operation of exercise equipment as a part of a weight loss program." While we agree that a dermatologist certainly may opine as to the training and education of another dermatologist, Orlow's report does not demonstrate that Orlow was practicing health care in the weight-loss field, which was the type of care or treatment delivered by Powell, or that Orlow has knowledge of the accepted standards of medical care for the diagnosis, care, or treatment of Bailey's obesity or ankle injuries, which are the relevant issues in this case. *See* Tex. Civ. Prac. & Rem. Code §§ 74.401(a)(2), 74.402(b)(1)-(2); *see also Broders,* 924 S.W.2d at 153 ("[W]e [focus] on whether the expert's expertise goes to the very matter on which he or she is to give an opinion."); *In re Windisch*, 138 S.W.3d 507, 513–14 (Tex. App.—Amarillo 2004, orig. proceeding) (holding radiologist was required to demonstrate his expertise regarding the standard of care for the performance of embolization of brain tumors); *Richburg v. Wolf*, 48 S.W.3d 375, 378 (Tex. App.—Eastland 2001, pet. denied) (holding board-certified plastic surgeon was required to demonstrate his expertise regarding the standard of care for breast reconstruction surgery performed by another board-certified plastic surgeon).

The health care providers in this case, where a patient fell, argue that the only experts qualified to provide an expert report are dermatologists treating patients for weight loss and using the Vibratrim VT300 vibrating machine and the Zerona Lipo Laser. We disagree. We hold the trial court did not abuse its discretion in finding Francis, a board-certified orthopedic surgeon, and Bell, a

---

[8] Orlow is a board-certified dermatologist and Chair of the Department of Dermatology at New York University School of Medicine and has treated patients for over 20 years.

12

board-certified bariatric physician, were qualified to opine regarding the applicable standards of care in this case. We note that Orlow, a board-certified dermatologist, although generally qualified to opine as to the standard of care for dermatologists, was not qualified to opine as to the standard of care for weight-loss health care providers. We overrule Powell and Amaya Clinic's third issue and overrule Bailey's third issue as it pertains to Orlow's qualifications.

## B. *Standards of Care and Causation*

In their first, second, and fourth issues, Powell and Amaya Clinic contend that the trial court abused its discretion in ordering Bailey to amend the Bell and Francis expert reports in lieu of dismissing the case[9] and in failing to dismiss the case because the expert reports do not adequately address the elements of standard of care and causation required by subsection 74.351(r)(6).[10] Powell and Amaya Clinic further argue the reports are conclusory as to these elements and erroneously apply a single standard of care to Powell and Amaya Clinic.[11] Bailey asserts in her

---

[9] The trial court found that, unless Bell and Francis knew that the Vibratrim was operating when Bailey was injured, they needed to limit their opinions "to the fact that it is below the standard of care for [Powell and Amaya Clinic] to allow or direct an obese patient with ambulation problems to mount or dismount an exercise machine such as the Vibratrim machine." The trial court sustained Powell and Amaya Clinic's objections to Bell's causation opinions, but found Francis's causation opinions "are a good faith effort." The trial court further found Powell and Amaya Clinic "should have more notice of the basis of Dr. Francis' causation opinions regarding Ms. Bailey's 'internal ankle derangement with plantar fasciitis, left and right sinus tarsi syndrome, and left and right tarsal tunnel syndrome.'" We note the trial court was authorized to grant only one extension to cure any deficiencies in the expert reports, which it had previously done. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c).

[10] Since we conclude above that the Orlow report does not demonstrate Orlow's qualifications to opine regarding the accepted standards of care for the diagnosis, care, or treatment of Bailey's obesity or ankle injuries, we do not address whether Orlow's report sufficiently addresses the applicable standards of care and causation. *See* Tex. Civ. Prac. & Rem. Code §§ 74.351(r)(6), 74.401, 74.402 (requiring expert report to contain opinions rendered by qualified expert).

[11] Powell and Amaya Clinic frame their second issue as follows: "The [Francis and Bell] Reports . . . were fatally deficient as to Standard of Care, Breach and Causation . . . ." However,

13

first and second issues that the Francis, Bell, and Orlow reports represent good faith efforts to comply with the definition of an expert report as required by section 74.351(r)(6). *See* Tex. Civ. Prac. & Rem. Code § 74.351(*l*). In her fourth issue, she asserts the Bell and Francis reports are not deficient even if they group Powell and Amaya Clinic together in discussing the relevant standards of care. We conclude the Francis and Bell reports contain fair summaries of the experts' opinions regarding the applicable standards of care and causation in compliance with the definition of an expert report in section 74.351. Thus, the trial court did not abuse its discretion in failing to dismiss the case.

As set forth above, the two-fold purpose of an expert report under section 74.351 is to inform the defendants of the specific conduct the plaintiff has called into question and to provide the trial court with a basis to determine whether or not the plaintiff's claims have merit. *Kelly v. Rendon*, 255 S.W.3d 665, 679 (Tex. App.—Houston [14th Dist.] 2008, no pet.). A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. *Palacios*, 46 S.W.3d at 879. Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Jelinek*, 328 S.W.3d at 539; *see also Davis v. Spring Branch Med. Ctr.*, 171 S.W.3d 400, 406 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("[T]he expert report has to set out, in nonconclusory language, the expert's opinion about [the] three [statutorily required] elements of the claim.").

Standard of care is defined by what an ordinarily prudent health care provider or physician would have done under the same or similar circumstances. *Palacios*, 46 S.W.3d at 880; *Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d

---

Powell and Amaya Clinic do not argue in their brief that the reports are deficient as to the manner in which the care rendered failed to meet the standard of care, so we do not address "breach." *See* Tex. R. App. P. 38.1(i).

740, 747 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Identifying the standard of care is critical: whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. *Palacios*, 46 S.W.3d at 880. While a "fair summary" is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given. *Id*. When a plaintiff sues more than one defendant, the expert report must set forth the standard of care for each defendant and explain the causal relationship between each defendant's individual acts and the injury. *Kingwood Pines*, 362 S.W.3d at 748. However, grouping defendants together in discussing the relevant standards of care does not render an expert report inadequate when all the defendants owed the same duty to the plaintiff. *Sanjar v. Turner*, 252 S.W.3d 460, 466-67 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding same standard of care may be applied to more than one physician if they all owed same duty to patient).

***Single Standard of Care Applied to Multiple Health Care Providers***. In his report, Francis includes two separate paragraphs discussing the standards of care for Amaya Clinic and Powell, as follows:

> The standard of care for Amaya Clinic required that its employees, including Anoop Chatuvedi and/or Dr. David Powell,[12] not place Sheila Ann Bailey, with known balance and instability problems, on a piece of equipment, the Vibratrim, for the purposes of losing weight because there is no proven scientific or medical benefit, not allow Ms. Bailey . . . on the Vibratrim because it is not designed for commercial use, . . . to be left unassisted to use the Vibratrim machine in an inappropriate fashion (to sit on the machine), [and] . . . to be left unassisted to descend from the Vibratrim machine on her own, which

---

[12] Bailey asserts she has not yet been able to conduct discovery to ascertain whether Powell is an employee of Amaya Clinic.

15

is unsafe.

. . . .

> The standard of care for Dr. David Powell required that he not order Sheila Ann Bailey to undergo exercise on the Vibratrim machine because of her known ambulation problems and leg instability, not place Sheila Ann Bailey, with known balance and instability problems, on the Vibratrim for the purposes of losing weight because there is no proven scientific or medical benefit, not allow Ms. Bailey . . . on the Vibratrim because it is not designed for commercial use, . . . to be left unassisted to use the Vibratrim machine in an inappropriate fashion (to sit on the machine), [and] . . . to be left unassisted to descend from the Vibratrim machine on her own, which is unsafe.

The significant difference between these two standards is that the standard of care for Amaya Clinic required its employees not to place Bailey, in her condition, on the Vibratrim machine, while the standard of care for Powell required that he not order Bailey, in her condition, to use the Vibratrim machine. These standards of care, although similar, are not the same. Thus, Francis articulates distinct standards of care applicable to each defendant.

Bell applies the same standard of care to Powell and "Powell's staff members," but he explains why: "An obese patient, or any patient, that has difficulty walking should not be directed by a medical professional, ***whether it is a doctor or a staff member such as a nurse or therapist***, to mount or dismount or stand on an unstable platform in a medical clinic." (Emphasis added.) Bell articulates the standards of care, in two paragraphs,[13] as follows: "It is my opinion that it was below the standard of care for Dr. Powell [and for his staff members] to direct Sheila Bailey to mount and dismount and stand on the unstable and vibrating Vibratrim VT300 machine because she had obvious walking and ambulating

---

[13] We have combined the two paragraphs for ease of reading.

16

problems." We conclude Bell sufficiently explained that Powell and Amaya Clinic both owed the same duties to Bailey. *See Sanjar*, 252 S.W.3d at 467. The argument that the Francis and Bell reports are deficient because they each apply a single standard of care to Powell and Amaya Clinic is without merit.

***Articulation of Standards of Care Not Conclusory***. Powell and Amaya Clinic argue the Francis and Bell reports are conclusory and thus deficient because they fail to articulate standards of care for the "treatment of a patient by a dermatologist in a weight-loss clinic setting," how the standards of care apply to Powell and Amaya Clinic, or that the standards of care are "equally applicable among practice areas." In support of this argument, Powell and Amaya Clinic cite cases that stand for the proposition that a physician must be qualified in the field of medicine at issue to opine on the standards of care. *See, e.g., Pacha v. Casey*, No. 14-07-00150-CV, 2008 WL 2837560 (Tex. App.—Houston [14th Dist.] July 22, 2008, no pet.) (mem. op.); *Foster v. Zavala*, 214 S.W.3d 106, 113 (Tex. App.—Eastland 2006, pet. denied). We have already concluded that Francis and Bell were qualified to opine regarding the applicable standards of care in this case.[14]

Powell and Amaya Clinic correctly argue that a physician's mere assertion of what he or she would have done is not relevant to the standard of care. *See Webster v. Johnson*, 737 S.W.2d 884, 886 (Tex. App.—Houston [1st Dist.] 1987, writ denied); *see Milkie v. Metni*, 658 S.W.2d 678, 681 (Tex. App.—Dallas 1983, no writ). However, Francis and Bell do not limit their articulations of the standards of care to what they personally would have done. Francis explains that Amaya Clinic should not have allowed its employees to place, allow, or leave

---

[14] Moreover, as set forth above, the Bell report opines that any "medical professional, whether it is a doctor or a staff member such as a nurse or therapist" owes the same duty not to direct a patient who has difficulty walking to "mount or dismount or stand on an unstable platform in a medical clinic." Thus, his report establishes that he considers this standard to be "equally applicable among practice areas."

Bailey unassisted on the Vibratrim machine. He further explains that Powell should not have ordered Bailey to use the Vibratrim machine, placed her on or allowed her to use the machine, or required her to dismount the machine unassisted. Bell also explains that Bailey should not have been directed by a medical professional to use, mount, dismount, and stand on the Vibratrim machine. Instead, Bailey should have been "directed to safer exercises such as water aerobics or walking on a flat, even surface." These are specific allegations that provide Powell and Amaya Clinic with notice of the conduct complained of by Bailey and what the experts believe Powell and Amaya Clinic should have done differently.[15] *See Palacios*, 46 S.W.3d at 880; *see also Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 342-43 (Tex. App.—Texarkana 2004, pet. denied). We conclude the Francis and Bell reports include sufficient articulations of the relevant standards of care.

*Causation*. Powell and Amaya Clinic argue that the Francis report is conclusory as to causation because Francis neither opines regarding how Bailey's injuries occurred nor rules out "other mechanisms of injury, including pre-existing musculoskeletal problems and comorbidities." However, Francis explains how Bailey's injuries occurred:

> It is when attempting to sit on the machine by dismounting from a standing position, the rubber pad that is attached to platform [sic] became unstable . . . . Upon dismounting the machine in an attempt to sit on the machine, the patient slipped from the Vibratrim platform injuring both ankles. The right ankle sustained a medial malleous injury fracture, and the left ankle sustained a complex ligamentous injury, which subsequently turned out to show complex instability of the left ankle mortise as well.

---

[15] This is without regard to whether the Vibratrim machine was in operation when Bailey fell. *See Palacios*, 46 S.W.3d at 879; *Sanjar*, 252 S.W.3d at 468.

18

Francis explains that Powell and Amaya Clinic breached the standards of care discussed above, and those breaches of the standards of care "caused and/or substantially contributed to . . . Bailey's ankle fractures and subsequent impairment and instability, specifically, her internal ankle derangement with associated ankle instability in both left and right ankles, left and right plantar fasciitis, left and right sinus tarsi syndrome, and left and right tarsal tunnel syndrome."

Moreover, Francis was not required to discuss every possible cause of Bailey's injury. *See Baylor Med. Ctr. at Waxahachie v. Wallace*, 278 S.W.3d 552, 562 (Tex. App.—Dallas 2009, no pet.). Section 74.351(r)(6) requires the expert report to provide a fair summary of the expert's opinions regarding the causal relationship between the failure of the physician or health care provider to provide care in accord with the pertinent standard of care and the injury, harm, or damages claimed. *Id*. (citing Tex. Civ. Prac. & Rem. Code § 74.351(r)(6)). Nothing in section 74.351 suggests the preliminary report is required to rule out every possible cause of the injury, harm, or damages claimed, especially given that section 74.351(s) limits discovery before a medical expert's report is filed. *Id*.

Powell and Amaya Clinic complain that Francis's causation opinion is contradictory as to whether Bailey fell off the Vibratrim machine because it was unstable or because Bailey suffered from ambulation problems. However, we do not agree that the report is contradictory: Francis opines that Bailey, an obese person with ambulation problems, should not have been placed on the Vibratrim machine, which allegedly had an unstable platform. Moreover, Bailey was not required to present evidence in the expert report as if she were litigating the merits of her claim. *See Palacios*, 46 S.W.3d at 879; *Sanjar*, 252 S.W.3d at 468. The report is not required to meet the same evidentiary standards as in a summary judgment proceeding or trial. *See Palacios*, 46 S.W.3d at 879. We conclude

Francis sufficiently explains the basis for his statements and describes a causal link between Powell's and Amaya Clinic's breaches of the applicable standards of care and Bailey's injuries. *See Sanjar*, 252 S.W.3d at 467-68. The Francis report provides a fair summary of Bailey's complaints. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6).

Powell and Amaya Clinic similarly complain about Bell's qualifications to opine on causation, which we already have addressed. Powell and Amaya Clinic also assert that Bell offers an account of how the fall occurred that is inconsistent with Francis's account. We disagree. Bell explains Bailey's medical records stated,

> She was unsteady on the [Vibratrim machine] and advised a staff member to have her get down. . . . [W]hile attempting to sit on the machine, she lost her balance and twisted her right ankle. . . . [X]-rays immediately after the incident showed a fracture in her right ankle and a left ankle sprain. . . . Records . . . noted internal ankle derangement in both ankles requiring surgery.

This explanation is not inconsistent with Francis's report, which indicates Bailey "slipped from the Vibratrim platform injuring both ankles" when she dismounted "the machine in an attempt to sit on [it]."

> Bell opines,

> It is my opinion that it was below the standard of care for Dr. Powell [and Dr. Powell's staff members] to direct Sheila Bailey to mount and dismount and stand on the unstable and vibrating Vibratrim VT300 machine because she had obvious walking and ambulating problems. More likely than not, Dr. Powell's [and his staff members'] actions in requiring Sheila Bailey to use the Vibratrim machine caused and/or contributed to Sheila Bailey's fall and injuries.

We conclude that Bell's report sufficiently addresses the element of causation, linking the breach of the standards of care (directing Bailey to use the Vibratrim

machine, among other things) with her ankle injuries.

Keeping in mind that expert reports are a preliminary method to show a plaintiff has a viable cause of action that is not frivolous or without expert support, we hold that the Francis and Bell reports complied with section 74.351's causation requirement and that the trial court did not abuse its discretion in failing to grant Powell and Amaya Clinic's motion to dismiss. *See Pokluda*, 283 S.W.3d at 123. We overrule Powell and Amaya Clinic's first, second, and fourth issues and sustain Bailey's first, second, and fourth issues as they pertain to the Francis and Bell reports.

We affirm the trial court's denial of the motion to dismiss. We remand the cause for proceedings consistent with this opinion.


/s/          Martha Hill Jamison
                     Justice


Panel consists of Justices Frost, Christopher, and Jamison (Frost, J., dissenting).