

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00181-CV

LONNIE WAYNE SHAW, INDIVIDUALLY, AND D/B/A SKYWEST ASSISTED LIVING
CENTER, BY SHAW, APPELLANTS

V.

LOUDENE WEST, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF BILLY EUGENE WEST, TERRY WESTER, BILL WEST AND KELLEY
GARDNER, APPELLEES

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 66,246-B, Honorable John B. Board, Presiding

September 24, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Lonnie Wayne Shaw, individually, and d/b/a Skywest Assisted Living Center
(collectively Skywest) appeals from an order denying its objections to two expert reports
and motion to dismiss the healthcare liability lawsuit filed against it by Loudene West,
individually and as personal representative of the estate of Billy Eugene West, Terry
Wester, Bill West, and Kelley Gardner (collectively West). We reverse and remand.

*Background*

Billy West was a resident of Skywest through July of 2011.[1] He was involved in an altercation with another resident on July 29th which altercation left him with fractures to his jaw, eye socket, and cheekbone and a bloody face, nose, ear and lip. Later that same day, he went to the same resident's room and was found therein with a bloody mouth and a wound on his hand.

A day later, Billy fell several times while attempting to leave his bed. These events left him with additional injuries to his mouth, nose, hands, and leg. According to the record before us, he was not afforded medical care or attention for the aforementioned injuries until July 31st. On that date, he was transferred to Baptist St. Anthony Hospital (BSA) whereat he underwent surgery for the fractures. On August 5, 2011, his caretakers placed him in the care of a hospice. Billy then died of pneumonia on August 18, 2011.

West filed a lawsuit claiming that Skywest 1) failed to have adequate staff, 2) failed to adequately supervise and control its patients, 3) accepted patients into the facility that it was unable or unqualified to care for and failed to refer those patients to a specialized facility, 4) failed to refer Billy to a facility to handle his injuries, and 5) failed to timely treat or secure treatment for Billy. West sought two forms of recovery. One involved damages to recompense Billy's pain and suffering prior to death and medical expenses. The other encompassed recovery by his spouse and family members for his wrongful death.

To support the claims asserted, West served two expert reports on Skywest pursuant to § 74.351 of the Texas Civil Practice and Remedies Code. One was from

---

[1] The exact date of his admission to Skywest is not discernible from the record.

Dr. Randall Samberson, a trauma physician. The other was from Donna McCauley, a registered nurse. Skywest challenged both those affidavits as deficient and moved for dismissal of the lawsuit. The trial court denied the motion, from which decision this appeal followed.

*Authority*

In a health care liability claim, the claimant must serve on each party one or more expert reports not later than the 120th day after the original petition is filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (a) (West Supp. 2014). A court shall grant a motion challenging the adequacy of an expert report only if it appears that the report does not represent an objective good faith effort to comply with the definition of an expert report. *Id.* § 74.351(l). Furthermore, an expert report means a written report that provides a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6). This definition is satisfied when the report provides 1) enough information to inform the defendant of the specific conduct that is questioned and 2) a basis for the trial court to conclude the claims have merit. *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). The report does not comply with the statute by merely stating the expert's conclusions about the standard of care, breach, and causation. *Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d 740, 747 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Instead, it must explain the basis of the expert's statement to link the conclusions to the facts, *Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002), and explain what care was expected but not given. *Bailey*

*v. Amaya Clinic, Inc.*, 402 S.W.3d 355, 367 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Finally, in reviewing the trial court's decision *viz* the adequacy of the reports, we apply the standard of abused discretion. *TTHR Ltd. Partnership v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013). If the decision abides by controlling rules and principles, the trial court did not abuse its discretion.

*Samberson Report*

Dr. Samberson's report dealt with Billy's death and the breached standard of care that caused it. Therein, he opined:

> It is my medical opinion that the 48 hour delay in Mr. West's emergency medical management for severe facial trauma and dehydration exacerbated the overall condition for this confused 81 year old gentleman.
>
> * * *
>
> His cause of death at autopsy was pneumonia as a consequence of blunt force injury to the head. He was diagnosed with right lower lobe pneumonia, which is common with aspiration. Confused patients with severe facial trauma are susceptible to aspiration of saliva and later developing pneumonia. These patients can not clear oral secretions normally resulting in inhalation of those secretions. Only by early intervention (>45 degrees) of the head of the bed and close respiratory management immediately following the injury can this outcome be avoided. . . .
>
> Emergency intervention for facial fractures require airway maintenance and control of hemorrhage . . . Mr. West was unable to close his mouth with a fracture of the right mandible, ongoing hemorrhage, and tongue edema.
>
> Dysfunctional ventilation leading to intubation greatly increases the risk of ventilator associated pneumonia associated with mortality risk greater than 50% . . . .
>
> * * *

> The cause of death is pneumonia caused by the severe facial injury and delay of treatment for that injury. . . .

According to Skywest, this report was deficient because it 1) failed to describe how a delay in treatment caused pneumonia, 2) did not articulate a standard of care, 3) contained conclusory statements requiring one to infer the meaning of "respiratory management" and "early intervention," and 4) failed to identify the person who should have provided respiratory management or early intervention.

Skywest correctly observed that Samberson attributed Billy's death to pneumonia caused by a forty-eight hour delay in securing emergency medical management for the fractures suffered by Billy. How that delay caused Billy's pneumonia, however, went unexplained. Admittedly, the doctor suggested that pneumonia could arise from the "aspiration" of saliva or "[d]ysfunctional ventilation leading to intubation [that] greatly increases the risk of ventilator associated pneumonia." Yet, he did not state or illustrate that Billy aspirated saliva during the forty-eight hours in question. Nor did he assert that the decedent suffered from "dysfunctional ventilation" (a condition that also went undescribed) during that same time period. Similarly omitted is any discussion as to how "aspiration" of saliva or "dysfunctional ventilation" could cause pneumonia. So, the report failed to link the delay to the ultimate cause of death; that rendered the document deficient.

*McCauley*

Next, McCauley's report dealt with both the injury suffered by Billy before he was removed from Skywest and hospitalized as well as the cause of his death. We first address the latter opinion, that is, the cause of death. She opined that he died from pneumonia due to the injuries suffered while under the care of Skywest on July 29th

5

and 30th. Statute specifies that "in a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship." TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (West 2011). Because McCauley is not a "physician," she cannot render an opinion on the cause of Billy's death. *See Rusk State Hosp. v. Black*, 379 S.W.3d 283, 292-93 (Tex. App.—Tyler 2010), *aff'd*, 392 S.W.3d 88 (Tex. 2012) (holding that a psychologist could not render an opinion on causation due to the statute); *Christian Care Centers, Inc. v. Golenko*, 328 S.W.3d 637, 647 (Tex. App.—Dallas 2010, pet. denied) (stating that a nurse and nursing home administrator were not qualified to testify to causation because neither were physicians). Nor may she opine on whether the purported breaches of duty committed by Skywest caused any other injury to Billy.

Being a non-physician, however, does not prevent McCauley from being an expert on other matters, assuming she is otherwise a qualified expert. As disclosed in her report and resume attached thereto, McCauley has been a registered nurse since 1998, holds a Bachelor of Science in Nursing degree, and served as director of nursing for six years in a 120-bed long term care and rehabilitation facility. She also 1) is employed as a clinical field staff supervisor overseeing a nursing staff and assisting with the care of multiple patients with "various disease processes including Alzheimer's and disease processes similar to that of" Billy's, 2) has worked in other long-term care facilities and assisted living facilities such as Ware Memorial, which also has an

6

Alzheimer's unit, 3) has "knowledge of state and federal regulations" applicable to such facilities, 4) "oversee[s] the care the nursing staff delivers and assist[s] them with any complications that arise," 5) is familiar with "the nursing standards of care applicable in this case and the state and federal guidelines governing nursing homes and assisted living facilities," 6) ensures, through her work, compliance with applicable state and federal "regulatory requirements in providing optimal care for the [e]lderly patients," and 7) "[a]ssess[es] acutely ill elders and determine[s] [their] need for medical care [a]nd or hospitalization."

One may become an expert in a matter through knowledge, skill, training, or education. TEX. R. EVID. 702; *In re Commitment of Bohannan*, 388 S.W.3d 296, 305 (Tex. 2012), *cert. denied*, _U.S._, 133 S.Ct. 2746, 186 L.Ed.2d 202 (2013). Moreover, a trial court has great discretion in determining whether a person is qualified as an expert. *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 20 (Tex. App.—Texarkana 2011, pet. denied). By refusing to accept Skywest's attack upon the report of McCauley, the trial court implicitly found her qualified to opine, as an expert, on the standard of care applicable to the care of the elderly, those afflicted with medical conditions experienced by Billy, and those who reside in assisted living facilities (like Skywest). We cannot say that the trial court abused its discretion in so concluding given McCauley's experience, skill, and training described above.

Furthermore, McCauley proffered several opinions regarding the standards of care applicable to Skywest and their breach. But that is not enough to satisfy the requirements of § 74.351. The expert report, by definition, must address not only the standard of care and its breach but also how the breach (or breaches as mentioned

7

here) caused injury. To reiterate, Nurse McCauley is not a physician; so, her opinions as to causation cannot be considered in determining whether West complied with § 74.351.

Accordingly, both expert reports are deficient. However, that does not mandate the dismissal of the suit. Instead, the trial court is authorized to determine whether a thirty-day extension to cure any and all deficiencies within the report is warranted. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011); *HEB Grocery Co., L.P. v. Galloway*, No. 09-13-00486-CV, 2014 Tex. App. LEXIS 5506, *21-22 (Tex. App.—Beaumont May 22, 2014, no pet.) (permitting remand for such a purpose). The order of the trial court denying Skywest's motion to dismiss is reversed, and the cause is remanded to the trial court to determine whether West should be afforded a thirty-day extension to cure the deficiencies noted in this opinion and any others that may be present in the reports.

Brian Quinn
Chief Justice

8