**Reversed and Remanded and Memorandum Majority and Dissenting Opinions filed July 27, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00289-CV

---

**BRADLEY  K. WEINER M.D., Appellant**

**V.**

**PATRICK  LASHFORD, Appellee**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-18756**

---

### MEMORANDUM  MAJORITY OPINION

Bradley K. Weiner, M.D., appeals from the denial of his motion to dismiss Patrick Lashford's health care liability claim due to the inadequacy of an expert report under Chapter 74 of the Civil Practice and Remedies Code.  In a single issue, Weiner contends that the trial court erred in denying his motion because the report does not adequately explain causation.  We agree with Weiner, so we reverse and remand for further proceedings.

## I.  Legal Principles and Standard of Review

For a health care liability claim, a claimant must serve an expert report on each defendant early in the litigation or risk dismissal of the claim.  *See* Tex. Civ. Prac. & Rem. Code § 74.351(a)–(b); *E.D. ex rel. B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022).  An expert report is "a written report by an expert that provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."  Tex. Civ. Prac. & Rem. Code § 74.351(r)(6).

When, as here, a defendant challenges the adequacy of the expert report, the trial court must grant a motion to dismiss "if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report."  *Id.* § 74.351(l); *Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018).  An expert report satisfies this "good-faith effort" requirement if the report discusses the standard of care, breach, and causation with sufficient specificity to (1) inform the defendant of the specific conduct called into question and (2) provide a basis for the trial court to conclude that the claims have merit. *See Baty*, 543 S.W.3d at 693–94; *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).  Although a report need not marshal the plaintiff's proof, it must provide more than conclusory statements concerning the applicable standard of care, breach, and causation.  *See Baty*, 543 S.W.3d at 693; *Jelinek*, 328 S.W.3d at 539, 540 n.9.  Regarding causation, a report must explain "how and why the breach caused the injury based on the facts presented."  *Jelinek*, 328 S.W.3d at 540.  The purpose of the expert-report requirement is to deter frivolous claims, not to dispose

2

of claims regardless of their merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011).

A court's inquiry into the adequacy of a report is confined to the four corners of the report, taken as a whole. *E.D.*, 644 S.W.3d at 664. The necessary information must be found in the text of the report itself; omissions cannot be supplied by inference. *Hall v. Davies*, 598 S.W.3d 803, 807 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Scoresby*, 346 S.W.3d at 555–56).

We review the trial court's denial of a motion to dismiss for an abuse of discretion. *Bailey v. Amaya Clinic, Inc.*, 402 S.W.3d 355, 361 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Baty*, 543 S.W.3d at 693. A trial court abuses it discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Bailey*, 402 S.W.3d at 361. Under this standard, "close calls must go to the trial court." *E.D.*, 644 S.W.3d at 664 (alteration and quotation omitted).

## II. Background

Lashford sued Weiner, bringing a single health care liability claim of negligence. Lashford alleged that during the summer of 2017, he began having pain in his lower back and left leg. In March 2018, Weiner performed surgery on Lashford—a "revision decompression/fusion surgery at L5-S1 with implantation of an interspinous process device." Lashford alleged that Weiner's care fell below acceptable medical standards because Lashford was "not a proper candidate for that procedure, and the procedure itself was not performed properly."

Lashford served Weiner with an expert report, which the trial court ruled was deficient, and the court allowed Lashford to file an amended report. In the amended report—the subject of this appeal—the expert reviewed Lashford's

3

medical history, including that Lashford underwent three surgeries: an L5/S1 microdisectomy in November 2017 with no complications, the complained-of fusion surgery in March 2018, and a subsequent microdisectomy in September 2019. Weiner's notes from the March 2018 surgery indicated that he "decorticated in standard fashion and used a combination of local bone graft and allograft bone to afford an excellent fusion bed." The expert explained that Weiner's treatment involved a "decision to excise the interspinous ligament, insert an interspinous device, and attempted fusion" of the L5 and S1 vertebrae. However, more recent imaging showed that the vertebrae were not fused together. The expert noted that "'decortication' of bone involves removing the outermost cortex of the vertebral surface and joints in order to create a surface that will fuse." Decortication is beneficial "only if the bones successfully fuse[] together."

The expert detailed the standard of care applicable to Weiner and the alleged breach; Weiner does not challenge this aspect of the report. The expert opined that a large majority of practicing spine surgeons view an interlaminar fusion procedure as "inappropriate and a fringe operation in all cases." Generally, spinal fusions are recommended in a limited number of cases: (1) instability; (2) malalignment, i.e., scoliosis involving a curve from side to side or sagittal malalignments in which the patient is pitched forward; or (3) when the amount of bone that needs to be removed is so much that the spine would become unstable. The expert reviewed all pre-surgical imaging and found no evidence of any of these circumstances. Thus, Weiner's excision of Lashford's interspinous ligament, insertion of an interspinous device, and attempted fusion were "not supported by reasonable modern medical care, and an attempted fusion was a deviation from the standard of care of a reasonable and prudent surgeon." The expert identified the breach of the standard of care as "performing an inappropriate procedure lumbar fusion surgery

4

on Mr. Lashford on May 23, 2018, given the lack of evidence of instability, malalignment, or need for extensive decompression." The surgery offered Lashford no potential benefit, and "any risks of the surgery would outweigh the potential benefit."

The expert opined regarding causation, "to a reasonable degree of medical certainty, that the breach in the standard of care by Dr. Weiner has resulted in pain, the need for ongoing medical care, and physical limitations to Mr. Lashford, which can be expected to continue into the future." The expert noted that Lashford has had "three operations at his L5/S1 level, and his interspinous ligament between L5 and S1 has been excised," which "places the patient at an increased risk for instability at the L5/S1 level. If this level becomes unstable in the future, he would require an additional procedure to fuse these vertebrae." The expert opined that disruption of the L5/S1 joints, which would have been performed in this case, "leads to accelerated degenerative changes at this level, leading to premature osteoarthritis and subsequent pain." The expert opined:

> From the patient's current condition (pseudoarthrosis or nonunion after an attempted fusion), he will have, to a reasonable degree of medical certainty, further symptoms and is at risk for requiring additional surgical intervention. This is especially true because of the patient's relatively young age and remaining life expectancy. I believe that the additional pain and suffering experienced by Mr. Lashford, including additional medical treatments that he may require, are a direct result of Dr. Weiner's breach in the standard of care.

Weiner filed an objection to the amended report and motion to dismiss. The trial court overruled the objection and denied the motion. Weiner appeals.

## III. Analysis

In a single issue, Weiner contends that the expert's report is inadequate because, among other reasons, (1) the expert's opinions about potential future harm

5

are insufficient to demonstrate causation, and (2) the expert's opinions about existing harm are conclusory.

We agree with Weiner that the expert's reference to potential future symptoms and medical treatments did not describe an injury that Weiner caused. The expert opined that Lashford "may require" and is "at risk" or an "increased risk" for additional medical treatments or procedures "if" Lashford's vertebrae become unstable. Similarly, the expert explained that Weiner's surgery leads to premature osteoarthritis, but the expert did not opine that Lashford suffers from the condition. *See Mooring v. Britton*, No. 07-20-00253-CV, 2021 WL 537205, at *3– 4 (Tex. App.—Amarillo Feb. 12, 2021, pet. denied) (mem. op.) (expert report was inadequate to establish causation of hemorrhage, which actually occurred, when expert opined that the breach caused a "risk" of hemorrhage); *THN Physicians Ass'n v. Tiscareno*, 495 S.W.3d 599, 613–14 (Tex. App.—El Paso 2016, no pet.) (expert report was inadequate to establish causation of injury to baby from mother's alleged condition during childbirth—chorioamnionitis—when expert opined only that the defendant's breach created an "increased risk" for the condition rather than actually caused the condition).

Regarding current pain, the expert's opinion is conclusory. The expert provided no detail or explanation for how or why Weiner's performing an unnecessary surgery caused Lashford "additional pain and suffering" or "pain, the need for ongoing medical care, and physical limitations." *See Jelinek*, 328 S.W.3d at 540 (expert report was conclusory and inadequate on issue of causation when the expert opined that a breach "resulted in increased pain and suffering and a prolonged hospital stay" with "no explanation of how the breach caused the injury"). The report provided no explanation for how or why the surgery resulted in pain, medical care, or physical limitations beyond what Lashford would have

experienced with no medical intervention for the condition that Lashford already suffered from. "Any recovery for pain and suffering in a medical malpractice case is limited to the additional pain and suffering caused by the improper medical treatment; recovery is not allowed for the normal pain that would have been experienced as part of proper treatment." *Tenet Hosps. Ltd. v. Bernal*, 482 S.W.3d 165, 170 (Tex. App.—El Paso 2015, no pet.) (holding that lay testimony could not establish causation for purposes of an expert report even when common sense would enable a layman to determine the causal relationship between an event and the condition). Neither this court nor the trial court may infer that Lashford suffered injury from the surgery beyond what he would have suffered without the surgery; the expert must explain how and why the breach caused any additional injury. *See Hall*, 598 S.W.3d at 807–09; *see also Ranelle v. Beavers*, No. 02-08-437-CV, 2009 WL 1176445, at *4, *6 & n.2 (Tex. App.—Fort Worth Apr. 30, 2009, no pet.) (mem. op.) (sufficient expert report for claim based on unnecessary surgery when the expert explained that the defendant's breach caused the plaintiff's "ongoing back problems and all of the consequences that naturally flow from performing a surgery that would not have been performed if [the defendant] had been honest," including "hospitalization, pain associated with recovery from the trauma of surgery, limitation in activities and additional medical care including in this case, physical therapy and additional surgery to remove the bone stimulator"); *Arboretum Nursing & Rehab. Ctr. Of Winnie, Inc. v. Isaacks*, No. 14-07-00895, 2008 WL 2130446, at *3–4 (Tex. App.—Houston [14th Dist.] May 22, 2008, no pet.) (mem. op.) (sufficient expert report detailed injury resulting from amputation because the expert "opined that the cutting of the skin and deeper tissue including the bone is associated with physical pain due to the severing of the sensory nerves," and "amputation is associated with mental anguish because of the human cerebral/emotional response to the loss of a body part").

7

The expert's conclusions regarding causation are mere *ipse dixit* and, thus, insufficient to satisfy the expert report requirement for Chapter 74. *See Hall*, 598 S.W.3d at 808–09.

## IV. Conclusion

Weiner's sole issue is sustained. We reverse the trial court's May 6, 2021 order overruling Weiner's objections and denying Weiner's motion to dismiss, and we remand to the case to the trial court with instructions for the court to assess and award Weiner reasonable attorney's fees and costs of court and to dismiss Lashford's claim with prejudice. *See id.* (citing Tex. Civ. Prac. & Rem. Code § 74.351(b), (c)).

/s/    Ken Wise
        Justice

Panel consists of Justices Wise, Poissant, and Wilson. (Poissant, J. dissenting).