**Reversed and Remanded, and Opinion filed November 22, 2011.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00050-CV

## KINGWOOD PINES HOSPITAL, LLC, HORIZON HEALTH CORPORATION, PSYCHIATRIC SOLUTIONS, INC. AND YOLANDA BASSETT, Appellants

## V.

## R. GOMEZ, INDIVIDUALLY AND A/N/F OF V.G., Appellee

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2010-11961**

# O P I N I O N

This is a health care liability case governed by the Medical Liability Act.[1] Appellants bring an interlocutory appeal from the trial court's order denying appellants' motions to dismiss based on the asserted inadequacy of an expert report served by appellee R. Gomez, individually and as next friend of her daughter V.G. We reverse the trial court's order denying the motions to dismiss and remand this cause to the trial court

---

[1] Tex. Civ. Prac. & Rem. Code §§ 74.001-.507. All references to the Act are to these provisions.

to consider whether a 30-day extension of the deadline for serving the report to allow Gomez to address deficiencies is appropriate.

## *Background*

V.G., a minor, was admitted into Kingwood Pines Hospital for evaluation of a psychiatric condition relating to her past history of being raped and subjected to sexual molestation in two separate incidents. As alleged, while in the care of Kingwood Pines Hospital, V.G. was molested by another female patient.[2] According to Gomez's expert, Dr. Mark Blotcky, Gomez asserted in an affidavit that hospital staff knew the other patient was aggressive, had been sexually abused, and had sexually molested others, but allowed the two patients to share a room and, accordingly, did not prevent the other patient from having physical access to V.G.[3]

Gomez filed suit on February 24, 2010, against appellants and others,[4] alleging that they failed to provide a reasonably safe environment for V.G. and the other patient by allowing them to share a room. Gomez asserted claims against appellants for negligence, aiding and abetting assault, assisting or encouraging assault, and medical malpractice. She seeks actual and special damages.

On May 28, 2010, Gomez served an expert report and curriculum vitae prepared by Dr. Mark Blotcky, a board certified psychiatrist, in support of her claims. After appellants objected to the adequacy of the report, Gomez served a supplemental expert

---

[2] The other patient, also a minor, allegedly got into bed with V.G., "made out with her," touched her private parts, left visual marks (hickeys) on her, and threatened to beat her up if she told anyone.

[3] The affidavit is not in the record, but the expert reported prepared by Dr. Mark Blotcky describes the affidavit and states that Blotcky relied on the affidavit in reaching his conclusions.

[4] Gomez sued Kingwood Pines Hospital, LLC; Horizon Health Corporation; Psychiatric Solutions, Inc.; Psychiatric Solutions, P.C.; Fernando Guillermo Torres, M.D. and Yolanda Bassett. Gomez alleged that Kingwood Pines Hospital is owned by the other corporate defendants. Only Kingwood Pines Hospital, Horizon Health Corporation, Psychiatric Solutions, Inc., and Bassett filed this appeal.

2

report.[5] Appellants objected to the adequacy of the supplemental report on the same grounds as their former objections and moved to dismiss the claims with prejudice pursuant to the Act.[6] *See* Tex. Civ. Prac. & Rem. Code § 74.351(b). Appellants contended that the initial report was inadequate because Blotcky (1) did not establish his qualifications to opine regarding the standards of care for the admission, treatment, and care of patients in a psychiatric facility; (2) failed to articulate a fair summary of his opinions regarding the applicable standards of care, the manner in which those standards were breached by appellants, and the causal relationship between any breach and the injury and damages claimed; and (3) attempted to apply a single standard of care to multiple health care providers. After considering appellants' challenges to the expert report and supplemental report and hearing arguments of the parties, the trial court entered an order denying appellants' motions to dismiss.

## *Discussion*

In two issues, appellants contend the trial court abused its discretion in denying appellants' motions to dismiss because the expert and supplemental reports neither establish Blotcky's qualifications to render an opinion regarding licensed professional counselors, nursing staff, and hospital personnel nor include a fair summary of Blotcky's opinions in connection with the statutory elements required by section 74.351—the applicable standards of care, the manner in which the care rendered failed to meet those standards, and the causal relationship between the failure and the injury, harm, or damages claimed. *See id.* Gomez contends the reports meet the standards required by section 74.351, but even if they do not, an expert report was not required because the doctrine of *res ipsa loquitur* applies.

---

[5] The supplemental report was served on June 24, 2010, the 120th day after Gomez filed suit, so both reports were timely under the Act. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a).

[6] Kingwood Pines Hospital, Horizon Health Corporation, and Psychiatric Solutions, Inc. jointly filed their objections and motion to dismiss, and Bassett filed her objections and motion to dismiss separately. All of appellants' objections were based on the same grounds.

**A.** *Standard of Review and Applicable Law*

The Act entitles a defendant to dismissal of a health care liability claim if he is not served with an expert report showing that the claim has merit within 120 days of the date suit was filed. Tex. Civ. Prac. & Rem. Code § 74.351(b); *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011). The trial court's refusal to dismiss may be immediately appealed. Tex. Civ. Prac. & Rem. Code § 51.014(a)(9); *Scoresby*, 346 S.W.3d at 549. We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W. 3d 873, 875, 878 (Tex. 2001); *Group v. Vicento*, 164 S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Similarly, we review a trial court's determination of whether a physician is qualified to opine in a health care liability case under an abuse of discretion standard. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006) (per curiam); *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Larson*, 197 S.W.3d at 304–05; *see also Jelinek*, 328 S.W.3d at 539.

The Act specifies requirements for an adequate report and mandates "an objective good faith effort to comply" with the requirements. Tex. Civ. Prac. & Rem. Code § 74.351(*l*), (r)(6); *Scoresby*, 346 S.W.3d at 549. It also authorizes a trial court to give a plaintiff who meets the 120-day deadline an additional 30 days to cure any deficiencies in the report. Tex. Civ. Prac. & Rem. Code § 74.351(c); *Scoresby*, 346 S.W.3d at 549. The trial court should err on the side of granting the extension and must grant it if the deficiencies are curable. *Scoresby*, 346 S.W.3d at 549. When determining if a good faith effort has been made, the trial court is limited to the four corners of the report and cannot consider extrinsic evidence. *See Jelinek*, 328 S.W.3d at 539; *Palacios*, 46 S.W. 3d at 878.

4

An expert must establish that he is qualified to provide an acceptable report. Tex. Civ. Prac. & Rem. Code § 74.351(r)(5)(B). Qualifications must appear in the expert report and cannot be inferred. *Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Additionally, an expert report must provide a fair summary of the expert's opinions regarding (1) the applicable standard of care; (2) the manner in which the care provided failed to meet that standard; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); *Palacios*, 46 S.W. 3d at 879. In compliance with these standards, the expert report must incorporate sufficient information to inform the defendant of the specific conduct the plaintiff has called into question and provide a basis for the trial court to conclude the claims have merit. *Patel v. Williams*, 237 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Palacios*, 46 S.W. 3d at 879). A report may not merely contain the expert's conclusions about these elements. *Jelinek*, 328 S.W.3d at 539; *Palacios*, 46 S.W. 3d at 879. The expert must explain the basis for his statements and must link his conclusions to the facts. *Jelinek*, 328 S.W.3d at 539. However, a plaintiff need not present all the evidence necessary to litigate the merits of his case. *Palacios*, 46 S.W. 3d at 879; *Patel*, 237 S.W.3d at 904. The report may be informal in that the information need not fulfill the same requirements as the evidence offered in a summary judgment proceeding or at trial. *Palacios*, 46 S.W. 3d at 879; *Patel*, 237 S.W.3d at 904.

## B. *Dr. Blotcky's Qualifications*

Within their second issue, appellants argue that the expert and supplemental reports do not establish that Blotcky was qualified to render an opinion regarding a licensed professional counselor[7] or nursing staff and hospital personnel.

To be qualified to provide opinion testimony regarding whether a health care provider departed from the accepted standard of health care, an expert must satisfy

---

[7] Bassett is a licensed professional counselor.

5

section 74.402. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(5)(B). Section 74.402 lists three specific qualifications an expert witness must possess to provide opinion testimony on how a health care provider departed from accepted standards of health care. The expert must:

> (1) [be] *practicing health care* in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

> (2) [have] knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

> (3) [be] *qualified on the basis of training or experience* to offer an expert opinion regarding those accepted standards of health care.

*Id.* § 74.402(b) (emphases added).

The above emphasized terms are specifically defined in subsections (a) and (c) of section 74.402. "Practicing health care" includes:

> (1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or

> (2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.

*Id.* § 74.402(a). To determine whether an expert is "qualified on the basis of training or experience," a court must consider whether the expert:

> (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

> (2) is actively practicing health care in rendering health care services relevant to the claim.

*Id.* § 74.402(c).

6

Blotcky has been a licensed physician for 40 years and has practiced psychiatry for almost 35 years. He also has been a clinical professor in the Department of Psychiatry of The University of Texas Southwestern Medical Center at Dallas for almost 35 years. He is board certified in child and adolescent psychiatry and general psychiatry. When the expert report was served, he maintained a private practice, and approximately 66% of his patients were children and adolescents.[8] He previously served on the managing board of directors of a psychiatric hospital, was director of the hospital's Child and Adolescent Psychiatry Residency Program, and clinical director of the hospital. He examined child psychiatrists for certification by the American Board of Psychiatry and Neurology for over ten years and served as Chair of the Committee for Certification of Child and Adolescent Psychiatry for that board.

Based on Blotcky's education, training, and experience in treating patients similarly situated to V.G.—an adolescent who was seeking treatment for her psychiatric conditions—and in working in a hospital setting, the trial court acted within its discretion in concluding that Blotcky is qualified to render an opinion on the standard of care at issue in this case. *See Pokluda*, 283 S.W.3d at 120. Similarly, Blotcky's hospital experience qualifies him to opine on the standards of care required for nursing staff and hospital personnel. *See* Tex. Civ. Prac. & Rem. Code § 74.402(c)(2); *see also Pokluda*, 283 S.W.3d at 118–19 ("The test is whether the report and curriculum vitae establish the witness's knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject.").

We hold that the trial court acted within its discretion by denying appellants' motions to dismiss as to Blotcky's qualifications, and we overrule that portion of appellants' second issue attacking the expert and supplemental reports on that basis.

---

[8] We assume this is still the case, but the record reflects only Blotcky's qualifications when the report was served.

7

## C. *Standard of Care and Breach*

In both issues, appellants contend that the expert and supplemental reports do not adequately address each element required by subsection 74.351(r)(6) (standards of care, breach, causation and damages) because the reports are conclusory as to each element and do not represent an objective good faith effort to comply with the statutory definition of an expert report. We first address whether the reports set forth the applicable standards of care and how appellants breached these standards. We conclude that they do not.

As set forth above, the two-fold purpose of an expert report under section 74.351 is to inform the defendants of the specific conduct the plaintiff has called into question and to provide the trial court with a basis to determine whether or not the plaintiff's claims have merit. *Kelly v. Rendon*, 255 S.W.3d 665, 679 (Tex. App.—Houston [14th Dist.] 2008, no pet.). A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. *Palacios*, 46 S.W.3d at 879. Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Jelinek*, 328 S.W.3d at 539; *see also Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) ("An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts."); *Davis v. Spring Branch Med. Ctr.*, 171 S.W.3d 400, 406 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("[T]he expert report has to set out, in nonconclusory language, the expert's opinion about [the] three [statutorily required] elements of the claim.").

Standard of care is defined by what an ordinarily prudent health care provider or physician would have done under the same or similar circumstances. *Palacios*, 46 S.W.3d at 880; *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 222 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Identifying the standard of care is critical: whether a defendant breached his or her duty to a patient cannot be determined absent

8

specific information about what the defendant should have done differently. *Palacios*, 46 S.W.3d at 880. While a "fair summary" is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given. *Id.* When a plaintiff sues more than one defendant, the expert report must set forth the standard of care for each defendant and explain the causal relationship between each defendant's individual acts and the injury. *CHCA Mainland L.P. v. Burkhalter*, 227 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2007, no pet.). While it is possible that a single standard of care may apply to several defendants, generic statements that the same standard of care attaches to each defendant without further explanation are conclusory. *See Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Tenet Hosps. Ltd. v. Love*, 347 S.W.3d 743, 753 (Tex. App.—El Paso May 27, 2011, no pet.) ("If the standard of care is the same for each defendant, then the report must state so.").

Blotcky's expert report addresses standards of care and breach as follows:

- Kingwood Pines Hospital was required to "supervise[] closely and house[] safely" any "aggressive [or] sexually aggressive 14 year old girl with a history of being both sexually molested and perpetrating sexual molestation herself so she could not harm another patient" [9] and provide treatment of patients such as V.G. "in a safe environment." The hospital staff "breached both these standards of care— effective, careful supervision of a predator and careful, effective protection of a molestation victim."

---

[9] We note that Blotcky bases his opinion on Gomez's affidavit stating that the patient who allegedly molested V.G. "was known by the hospital staff to be aggressive, to have been sexually abused and to be a sexual molester." We assume without deciding the accuracy of this allegation because we are confined to the four corners of the expert report in our consideration of its adequacy. *See Palacios*, 46 S.W. 3d at 878. While an expert may rely on a statement that otherwise would not be admissible in evidence in formulating his opinions, *see Gannon v. Wyche*, 321 S.W.3d 881, 890–91 (Tex. App.— Houston [14th Dist.] 2010, pet. denied), it is unclear how Gomez obtained this information. *Cf. id.* at 892 ("[A]ll that is required is that [the] expert report informs the defendants of the specific conduct the plaintiffs have called into question and provides a basis for the trial court to conclude that the claims have merit.").

- Dr. Torres[10] and Bassett were required "to ensure that there were appropriately trained and adequate staffing and milieu structure" so that a "young" patient "would not be sexually molested." They breached "their duties to [V.G.]" by failing to do so.

The supplemental report further addresses these issues as follows:

- While they "may each have different standards of care in some areas," Kingwood Pines Hospital, Torres, and Bassett "share the most rudimentary responsibility for the safety and security of their patients . . . in whatever therapeutic milieu their patient is being treated. The safety and security of any patient is always a most basic element in the standard of care." The "treating team" must "provide additional supervision" to patients with histories "of hurting themselves and being vulnerable to being hurt by others." Kingwood Pines Hospital, Torres, and Bassett breached this standard of care, as "[V.G.] was not afforded the most basic supervision under their care."

- Kingwood Pines Hospital must not "allow any harm to occur to any of its patients." The standard of care for the hospital "is to supervise the behavior of each and every patient." "Based on the facts contained in the medical records," the hospital breached its standard of care by failing to provide "a safe and secure environment" and "allowing" V.G. "to be molested by another patient."

- Bassett was required to "do anything necessary" to "insure that any patient she treats in [the] hospital . . . has been admitted to a safe and secure milieu" by "be[ing] aware of the treatment milieu, patient population, and the structure and safety measures" in place. She breached the standard of care by failing to "insur[e] her patient's basic safety using any number of measures available."

Appellants complain that Blotcky's articulation of the applicable standards of care is deficient in two regards, first, that Blotcky improperly applies a single standard of care to multiple health care providers and second, that his articulation of the standard is conclusory.

***Single Standard of Care Applied to Multiple Health Care Providers***. In the expert report, Blotcky applies a standard of care to Kingwood Pines Hospital separate from the standard he applies to Bassett and Torres. He states that the hospital was

---

[10] As set forth above, Torres is a defendant in the underlying case, but not an appellant.

required to supervise known sexually aggressive patients and protect molestation victims from aggressive patients.  By contrast, he applies a single standard of care to Torres and Bassett—to insure that the hospital had properly trained and adequate staffing so that a patient would not be molested.  In the supplemental report, Blotcky clarifies that, although "they may have different standards of care in some areas," the hospital, Torres, and Bassett all shared the same responsibility for the safety and security of their patients.  He further articulates the standard as to each party.  The hospital was required to supervise every patient.  Torres was required to "admit patients only to . . . facilit[ies] that provide[] a safe and secure environment," "work with the treatment team to understand his patient's treatment and other needs," "consult with . . . staff to insure . . . his orders are understood and followed" and "know the inpatient program and how it implements a safe structure for patients who have been either victims or perpetrators of sexual assault." Similarly, Bassett was required to insure her patients are being treated in a safe and secure environment by being aware of the environment, patient population, and safety measures taken by the hospital.

We conclude that Blotcky articulates a standard of care for each appellant, although conclusorily, as set forth below.  In the supplemental report, he adequately explains why the standards of care overlap as to the parties, which cures any deficiencies with regard to his applying the same standard to Torres and Bassett in the expert report. *See Tenet*, 347 S.W.3d at 753.  We thus find without merit appellants' argument that Blotcky improperly applies the same standard of care to multiple health care providers.

***Conclusory Articulation of Standard of Care***.  Other than containing conclusory statements regarding the provision of a secure environment, the supervision of patients, and the prevention of harm to patients, the reports do not indicate what an ordinarily prudent health care provider would do under the same or similar circumstances.  *See Palacios*, 46 S.W.3d at 880.  They merely include Blotcky's conclusion that appellants

11

did not provide a safe and secure environment for V.G., but do not specify how this should have been accomplished. They are thus deficient in this regard. *See id.*

***Breach of the Standard of Care***. Blotcky's statements regarding breach of the standard of care, such as Bassett's "failing to ensure that there were appropriately trained and adequate staffing and milieu structure such that a young girl (about whom they were forewarned was vulnerable) would not be sexually molested" and "breach[ing] the standard of care by not insuring her patient's safety using *any of the number of measures available*" and appellants' failing to "provide additional supervision" and "not afford[ing] [V.G.] . . . *the most basic supervision*" are similarly conclusory. (Emphases added.) Whether a defendant breached the standard of care cannot be determined without "specific information about what the defendant should have done differently." *Id.* For example, the reports do not provide information about how Bassett was to insure that hospital staff were appropriately trained and adequately staffed or what "measures" were available to her to insure her patient's safety. Nor do the reports indicate what kind of supervision by the hospital or Bassett was necessary or "basic" to provide a secure environment for V.G.[11] Blotcky, moreover, states that the hospital breached its standard of care "[b]ased on the facts contained in the medical records," but does not indicate on what "facts" he relies to reach that conclusion.

We conclude that Blotcky's reports are deficient because they do not adequately describe applicable standards of care or breaches of those standards by each appellant.

---

[11] Gomez argues that this case is akin to *Russ v. Titus Hospital District*, 128 S.W.3d 332 (Tex. App.—Texarkana 2004, pet. denied), which held that an expert report was sufficient relating to a claim filed by a mentally ill patient who was allowed access to an unsecured window out of which she fell. *Id.* at 344. But the expert report in that case specifically outlined that the standard of care required a suicidal patient not to be placed in a room with unlocked windows and what steps the hospital, doctors, and nurses should have taken to secure the windows, *id.* at 342, whereas the reports in this case merely state that V.G. should have been placed in a secure environment where patients were supervised, without specifying how this should have been accomplished.

12

**D.** *Causation*

Conclusory statements also plague Blotcky's efforts to satisfy the statutory element of causation. In the expert report, he simply states, "In medical probability, V.G. would be expected to suffer significant psychological damage especially from sexual molestation occurring to her in a treatment setting. The proximate cause of this was the hospital's failure as well as that of . . . Ms. Bassett to meet the standard of care." Likewise, he states in the supplemental report that appellants' breaches of the standards of care caused V.G.'s damages and "[h]ad [V.G.] and the other patients been properly supervised, [V.G.] would not have been assaulted."

These reports do not adequately describe the causal relationship between appellants' failures to meet the standards of care and V.G.'s injury: Blotcky provided no explanation regarding how and why these failures resulted in the alleged molestation. Rather, he provided bare assertions that appellants' failure to "properly supervise" the patients resulted in V.G.'s damages. He did not attempt to explain what constitutes proper supervision. Because the reports do not contain this required information, they are deficient. *See Jelinek*, 328 S.W.3d at 539–40; *Palacios*, 46 S.W.3d at 879 (holding reports that merely state expert's conclusions about causation are deficient).

**E.** *Res Ipsa Loquitur*

Gomez also contends she was not required to serve expert reports because the negligence alleged in this case rises to the level of *res ipsa loquitur*.

*Res ipsa loquitur* is not a cause of action separate from negligence; rather, it is a rule of evidence by which the jury may infer negligence. *Losier v. Ravi*, ___ S.W.3d ___, No. 14-08-00399-CV, 2009 WL 3365867, at *2 (Tex. App.—Houston [14th Dist.] Sept. 10, 2009, no pet.). It applies to situations in which two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Id*. Further, the doctrine applies only when

13

the nature of the alleged malpractice and injuries are plainly within the common knowledge of laypersons, requiring no expert testimony. *Id.*

The legislature limited the applicability of *res ipsa loquitur* in health care claims only to those instances in which the doctrine had been applied by Texas appellate courts as of August 29, 1977. *See* Tex. Civ. Prac. & Rem. Code § 74.201. The three recognized areas in which *res ipsa loquitur* applies to health care claims are negligence in the use of mechanical instruments, operating on the wrong body part, and leaving surgical instruments or sponges inside the body. *Losier*, 2009 WL 3365867, at *2 (citing *Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex. 1990)); *Hector v. Christus Health Gulf Coast*, 175 S.W.3d 832, 837 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

While the nature of Gomez's claims of malpractice and V.G.'s alleged injuries may be plainly within the common knowledge of laypersons, Gomez would still have to show that her claim fell within one of the pre-1977 categories of cases in order for *res ipsa loquitur* to apply. *See Losier*, 2009 WL 3365867, at *2; *Hector*, 175 S.W.3d at 837. Because it does not, we find without merit Gomez's argument that she was not required to serve an expert report.

We hold that the trial court abused its discretion by denying the motions to dismiss because they do not adequately describe the elements required by subsection 74.351(r)(6). We thus sustain that portion of appellants' issues attacking the adequacy of the expert and supplemental reports because they are deficient.

**F. *Opportunity to Cure***

In their second issue, appellants assert that because of the reports' deficiencies, no "expert report" has been timely served and this case should be dismissed. As discussed above, Gomez's reports are deficient. But even with these deficiencies, the trial court still has discretion to grant Gomez a thirty-day extension under section 74.351(c). *See* Tex. Civ. Prac. & Rem. Code § 74.351(c); *Scoresby*, 346 S.W.3d at 554. Gomez requested such an extension in the trial court, and the trial court has not ruled on this

request.  The appellants have not shown that Gomez is not entitled to a ruling on her request for a thirty-day extension under section 74.351(c).[12]  *See* Tex. Civ. Prac. & Rem. Code § 74.351(c); *Scoresby*, 346 S.W.3d at 554.  Therefore, while we agree with appellants that the reports are deficient, we conclude that this case should be remanded for the trial court to consider granting a 30-day extension to cure the reports' deficiencies under section 74.351(c).  Accordingly, we overrule appellants' second issue.

### *Conclusion*

We reverse the trial court's order denying the motions to dismiss filed by appellants and remand this cause to the trial court to consider whether a 30-day extension to allow Gomez to address the deficiencies in the reports is appropriate.


/s/            Martha Hill Jamison
               Justice


Panel consists of Justices Frost, Seymore, and Jamison.

---

[12] Even if appellants had argued that Gomez's reports amount to no report at all and even if it were appropriate to address that argument at this juncture, we would still conclude that the reports satisfy the minimal standard in *Scoresby*.  *See Scoresby*, 346 S.W.3d at 557.