**Reverse and Remand; Opinion Filed March 6, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00586-CV

**SENIOR CARE CENTERS, LLC AND MIDLAND SCC, LLC, Appellants**
**V.**
**CYNTHIA SHELTON AND BETSY TAYLOR, BOTH INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CAROLYN MCCAIN, DECEASED, Appellees**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-13395**

## OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Evans

This is an interlocutory appeal of the trial court's denial of Senior Care Centers, LLC and Midland SCC, LLC's (collectively, "Senior Care Center") motion to dismiss the claims of appellees Cynthia Shelton and Betsy Taylor. Senior Care Center contends that the trial court abused its discretion by failing to grant the motion to dismiss because the expert report was deficient (1) on breach because the expert based his opinion on conjecture and lay opinion testimony and failed to describe how Senior Care Center's conduct fell below the standard of care; and (2) on causation because it failed to discuss why an act or omission was a substantial factor in causing the injury. Because we conclude that the motion to dismiss should have been granted, we reverse and remand for further proceedings regarding attorneys' fees.

**BACKGROUND**

Carolyn McCain suffered a stroke and a myocardial infarction. After initially receiving rehabilitation at a hospital, McCain was transferred to Senior Care Center on November 14, 2011. According to appellees' petition, McCain's treating physicians ordered that she was not to be fed by mouth and was only to receive food by a percutaneous endoscopic gastronomy tube together referred to by appellees as "NPO." On November 17, 2011, McCain was found in respiratory distress and transferred to a hospital. After an unsuccessful attempt to intubate McCain, physicians discovered and removed food particles in her vocal cords, oral pharynx, and on her soft and hard pallet. After McCain received a poor prognosis, the breathing tube was removed and she died.

In November 2013, appellees, both individually and on behalf of the Estate of Carolyn McCain, sued Senior Care Center for negligence. Appellees also served an expert report dated May 13, 2013 by Dr. David Mansfield with the petition since their claims involved health care liability claims. Senior Care Center objected to the sufficiency of the expert report and it moved to dismiss appellees' claims. Following a hearing, the trial court sustained the objections and ordered appellees to serve an amended or supplemental expert report. Appellees then served Senior Care Center with a first amended expert report dated January 29, 2014, and a second amended expert report dated February 23, 2014. Senior Care Center again moved to dismiss appellees' claims alleging the report still contained deficiencies. At the second hearing, the trial court concluded that the report was sufficient, overruled the objections, and denied the motion to dismiss. Senior Care Center then filed this interlocutory appeal.

ANALYSIS

## A.     Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim under the expert report provisions of chapter 74 for an abuse of discretion.  *See Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex. 2006) (discussing the Medical Liability Insurance Improvement Act (former article 4590i of the Texas Revised Civil Statutes) which was replaced by chapter 74 of the Texas Civil Practice and Remedies Code); *Am. Transitional Care Cntrs. of Texas v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (same); *Kelly Ryan Cook, P.A. v. Spears*, 275 S.W.3d 577, 579 (Tex. App.—Dallas 2008, no pet.) (discussing expert reports required by the Texas Medical Liability Act "TMLA" codified in section 74.351(a) of the Texas Civil Practice and Remedies Code).  A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without any reference to guiding rules or principles.  *See Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999).

## B.     Expert Report Statutory Requirements

The Texas Civil Practice and Remedies Code defines an expert report as:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2014).  Further, the statute provides that a "court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report."  *Id.* at § 74.351(l).  A good faith effort has been defined as a report that does not contain a material deficiency.  *Samlowski v. Wooten*, 332 S.W.3d 404, 409–10 (Tex. 2011).  Therefore, the report must include all the required elements

and explain their connection to the defendant's conduct in a non-conclusory fashion. *Id.* at 410. When determining if a good faith effort has been made, the trial court is limited to the four corners of the report and cannot consider extrinsic evidence. *Palacios*, 46 S.W.3d at 878.

### C. The Expert Report Fails to Adequately Address the Elements Required by Subsection 74.351

Senior Care Center contends that the expert and supplemental reports do not adequately address each element required by subsection 74.351(r)(6) because the reports fail to (1) provide a fair summary of how the conduct of Senior Care Centers or its employees' breached the standard of care and (2) explain how the alleged breach caused the injury. We agree.

The purpose of an expert report under section 74.351 is to inform the defendants of the specific conduct the plaintiff has called into question and to provide the trial court with a basis to determine whether the plaintiff's claims have merit. *See Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d 740, 747 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these purposes. *Palacios*, 46 S.W.3d at 879. Instead, the expert must explain the basis of his statements to link his conclusions to the facts. *Kingwood Pines Hosp., LLC*, 362 S.W.3d at 747.

### 1. Standard of Care and Breach

As an initial matter, the expert report fails to provide the necessary specificity required for the standard of care. Identifying the standard of care is critical because whether a defendant breached his or her duty to a patient cannot be determined without specific information about what the defendant should have done differently. *Palacios*, 46 S.W.3d at 880. The initial expert report addressed the standard of care and breach as follows:

> • The standard of care "required that: 1. patients who are NPO not be fed by mouth. 2. If a patient is accidentally fed by mouth the nurse and physician be notified so that aspiration of food into the airway can be prevented.

• "However, at Senior Care of Midland Carolyn McCain was fed meat and other food products by mouth, a violation of the standard of care."

• "If Carolyn McCain had been mistakenly fed with solid food the nurse and physician needed to be notified so that any aspirated food could be removed from the airway. However, there is no recordation of feeding by mouth or notification of nurse or physician in the medical record, a violation of the standard of care."

• "Carolyn McCain was found with meat and food particles obstructing her airway, which caused acute respiratory distress from which she did not recover, a violation of the standard of care."

• "If Senior Care of Midland had followed Carolyn McCain's NPO status, she would not have been fed meat and other food by mouth, which obstructed her airway, causing acute respiratory failure and her death. If Senior Care of Midland staff mistakenly fed Carolyn McCain, they should have notified her nurse and her physician, so that Carolyn McCain could have been suctioned to remove the food from her airway and she would not have developed acute respiratory failure and die."

• "If the standard of care as outlined above had been followed by Senior Care of Midland, Carolyn McCain would not have been fed by mouth and aspirated food, blocking her airway, causing acute respiratory failure and her death."

The second and third reports further address the issues as follows:

• "Since Ms. McCain was on NPO status, Senior Care of Midland was required to not feed her solid food, and to take steps to prevent others from feeding her solid food. Senior Care was required to monitor Ms. McCain and ensure that Ms. McCain's family was educated regarding her NPO status, that Ms. McCain's roommate was educated regarding her NPO status, and that other residents not be permitted to feed her."

• The standard of care also required Senior Care Center to "note in the records if Ms. McCain experienced any such acute, severe breathing problems upon admission."

These conclusory statements fail to indicate what specifically an ordinarily prudent health care provider *would do* under the same or similar circumstances. *Palacios,* 46 S.W.3d at 880. For example, the expert failed to provide specifics as to what steps should have been taken to prevent McCain from being fed by the different types of people in her room: health care staff, McCain herself, McCain's visitors, her roommate, her roommate's visitors, and other residents. The reports do not state what specifically should have been done to educate those different groups of

people in McCain's room regarding McCain's NPO status and what, if any, more affirmative conduct to prevent others in the room from providing food to McCain to eat was required.

Further, the expert's statements on breach of the standard of care are conclusory. In fact, the report appears to conclude that there was a breach based only on a result—that food particles were found in McCain's airway. However, "[a] finding of negligence may not be based solely on evidence of a bad result to the claimant in question," although a bad result certainly may be considered along with other evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 74.303(e)(2) (West 2011) (statement must be included in jury instructions for health care liability claim); *see also Palacios,* 46 S.W.3d at 880 (breach cannot be inferred from the existence of an injury alone because the doctrine of res ipsa loquitor does not generally apply in medical malpractice cases). In addition, the expert fails to state anywhere in the report what actions or precautionary measures Senior Care Center failed to do or take or what it should have done differently. *See Gray v. CHCA Bayshore L.P.,* 189 S.W.3d 855, 859 (Tex. App.—Houston [1st. Dist.] 2006, no pet.) ("Whether a defendant breached the standard of care due a patient cannot be determined without 'specific information about what the defendant should have done differently.'" (quoting *Palacios,* 46 S.W.3d at 880)); *Kingwood Pines Hosp., LLC*, 362 S.W.3d at 750 (concluding expert reports were deficient as to elements of standard of care and breach because "the reports do not provide information about how [the defendant] was to insure that hospital staff were appropriately trained and adequately staffed or what 'measures' were available to her to insure her patient's safety. Nor do the reports indicate what kind of supervision by the hospital or [the other defendants] was necessary or 'basic' to provide a secure environment for [the patient].").

Dr. Mansfield opines that McCain was "most likely" fed solid food by the staff at Senior Care Center because, "[McCain's daughter] noted in her affidavit that Ms. McCain's roommate was educated regarding her NPO status, other residents were not allowed in her room and family

members knew not to feed her." However, a description of only a possibility of causation does not constitute a good faith effort to comply with the statute. *Walgreen Co. v. Hieger,* 243 S.W.3d 183, 186 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The daughter's affidavit on which Dr. Mansfield relied stated only that she had informed the roommate of McCain's NPO status and "to this day I believe she understood me and would not have provided food or drink to my mother." The daughter's affidavit stated that none of McCain's family members fed McCain but did not state the facts from which she drew that conclusion. No mention is made in the daughter's affidavit of whether the roommate's visitors fed McCain and how she would know. The daughter stated she understood other residents were not to visit McCain and "[p]olicing that was Senior Care of Midland's responsibility," but does not identify the factual basis for either statement. The daughter's affidavit concludes, "I believe that a Senior Care of Midland staff member or employee improperly provided food (and possibly a drink) to my mother. I believe it was unlikely to have been anyone else." Dr. Mansfield does not explain how he derived his opinion that a Senior Care of Midland staff member or employee "most likely" fed solid food to McCain apart from his reliance on the daughter's beliefs about the facts.

When facts support equal inferences from which different conclusions could be drawn regarding whether or not a health care provider's act or omission fell below an identified standard of care, it is incumbent on the expert to explain to a reasonable degree of medical probability how the expert eliminated the possibilities not chosen and derived his conclusion that the health care provider was negligent. *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010) ("[W]hen the facts support several possible conclusions, only some of which establish that the defendant's negligence caused the plaintiff's injury, the expert must explain to the fact finder why those conclusions are superior based on verifiable medical evidence, not simply the expert's opinion."). An expert's conclusion not accompanied by a rational explanation demonstrating

–7–

why the other possibilities are inferior to the expert's chosen conclusion is a conclusory opinion based solely on the ipse dixit of a credentialed witness. *Id.* The supreme court has instructed courts to reject such conclusory opinions as an inadequate medical report. *Id.*

Here, the report fails to rule out the equal possibilities that someone other than the staff at Senior Care Center fed McCain food. The daughter's beliefs about who did and did not feed McCain do not supply Dr. Mansfield with the necessary rational basis for his medical opinion to any greater degree than if they were his beliefs about the facts. An affiant's beliefs about what the facts are does not make those beliefs facts nor constitute personal knowledge of the believed facts. *See Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008). Accordingly, we conclude that the expert report is deficient because it does not adequately describe the standard of care, any breaches of those standards of care by Senior Care Center, or rationally eliminate other equal possibilities for what occurred that do not involve Senior Care Center breaching a standard of care.[1]

### 2. Causation

In his expert report, Dr. Mansfield opines that "neglect of Carolyn McCain by Senior Care of Midland caused her to aspirate food into her airway, causing acute respiratory failure and is the proximate cause of her death." This statement does not adequately describe the causal relationship between Senior Care Center's failure to meet the standard of care and McCain's

---

[1] At several stages of civil litigation, the equal inference rule has been used to not permit drawing a conclusion when the facts support more than one inference or possibility and none is more probable than another. *See Jelinek*, 328 S.W.3d at 536 (Tex. 2010) (medical report does not meet statutory requirements when equal possibilities not rationally eliminated); *City of Keller v. Wilson*, 168 S.W.3d 802, 813–14 (Tex. 2005) (review of summary judgment evidence, "[i]n claims or defenses supported only by meager circumstantial evidence, the evidence does not rise above a scintilla (and thus is legally insufficient) if jurors would have to guess whether a vital fact exists. When the circumstances are equally consistent with either of two facts, neither fact may be inferred.") (internal quotations and citations omitted); *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997) (post-trial analysis when circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred).

ingestion of food.  Causation cannot be inferred; it must be clearly stated.  *Tenet Hosps. Ltd. v. Love*, 347 S.W.3d 743, 755 (Tex. App.—El Paso 2011, no pet.).  Thus, the conclusory statement that "neglect" caused McCain's death is insufficient to satisfy the element of causation.  For the reasons stated above regarding the failure to eliminate other equally possible explanations for how the solid food was obtained and eaten by McCain that do not involve Senior Care Center's negligence, Dr. Mansfield's opinion does not adequately describe the causal relationship between Senior Care Center's failures to meet the standards of care and McCain's injury.

## CONCLUSION

In view of Dr. Mansfield's general and conclusory statements in his reports, we conclude that the trial court abused its discretion by failing to dismiss the claims against Senior Care Center.  We resolve the issues against Senior Care Centers, reverse the trial court's order, and remand the case to the trial court for dismissal and a determination of attorney's fees and costs of court pursuant to section 74.351(b) of the TMLA.  *See PM Mgmt.-Trinity NC, LLC v. Kumets*, 404 S.W.3d 550, 551 (Tex. 2013).

/ David Evans/
DAVID EVANS

140586F.P05                                                    JUSTICE

–9–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

SENIOR CARE CENTERS, LLC AND
MIDLAND SCC, LLC, Appellants

No. 05-14-00586-CV        V.

CYNTHIA SHELTON AND BETSY
TAYLOR, BOTH INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF
CAROLYN MCCAIN, DECEASED,
Appellees

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-13395.
Opinion delivered by Justice Evans.
Justices Bridges and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants SENIOR CARE CENTERS, LLC AND MIDLAND SCC, LLC recover their costs of this appeal from appellees CYNTHIA SHELTON AND BETSY TAYLOR, BOTH INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CAROLYN MCCAIN, DECEASED.

Judgment entered this 6th day of March, 2015.