# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00377-CV

---

**HMIH Cedar Crest, LLC d/b/a Cedar Crest Hospital & RTC, Appellant**

**v.**

**Christina Buentello, Individually and As Next Friend of D.B.J., a Minor, Appellee**

---

**FROM THE 169TH DISTRICT COURT OF BELL COUNTY
NO. 312,473-C, THE HONORABLE GORDON G. ADAMS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant HMIH Cedar Crest, LLC d/b/a Cedar Crest Hospital & RTC (Cedar Crest) appeals the denial of its motion to dismiss the suit by appellee Christina Buentello, Individually and As Next Friend of D.B.J., a Minor. Cedar Crest contends that the trial court abused its discretion by overruling its objections to Buentello's expert report because it is (1) deficient in its description of the standard of care and the manner in which Cedar Crest breached the standard of care and (2) conclusory and fails to satisfy the statutory requirements regarding causation. We conclude that Buentello's expert report is inadequate, reverse the trial court's order and remand for the trial court to consider whether to dismiss the cause or to grant Buentello's request for a thirty-day extension to cure deficiencies in the report, as well as for other proceedings consistent with this opinion.

## BACKGROUND[1]

Six-year-old D.B.J. was admitted into Cedar Crest for treatment of suicidal ideation and psychotic symptoms, including auditory hallucinations. As part of his intake process, D.B.J. was identified as a child with severe mental illness and as particularly vulnerable to psychological and medical harm. The next day, an eight-year-old patient was admitted into Cedar Crest and became D.B.J.'s roommate. That night, at approximately 9:30 p.m., Cedar Crest staff heard screaming and crying from D.B.J.'s room. The staff learned that the roommate had choked and sexually assaulted D.B.J. The staff took the older child to a different room for the night and noticed abrasions on D.B.J.'s throat as well as what Buentello's expert described as "psychological injuries."

After a staff shift change the next morning, the oncoming registered nurse assessed D.B.J. and noticed that he had swelling and petechiae around both eyes and bruising and scratches around his neck. Cedar Crest did not inform D.B.J.'s mother until they sent him to the emergency room about thirteen hours after the altercation. D.B.J.'s roommate disclosed performing oral sex on D.B.J. to a visiting child protective services caseworker, which D.B.J. confirmed. D.B.J. was discharged from Cedar Crest that day.

Buentello sued Cedar Crest, individually and on behalf of D.B.J., alleging negligent hiring, retention, and supervision, and medical malpractice for failures to monitor, to protect D.B.J., to assess him, to examine D.B.J.'s injuries, and to treat him properly. Buentello submitted an expert report by Dr. Daniel Duhigg on the medical malpractice issues. Cedar Crest

---

[1] This summary is drawn from the allegations and assertions in appellee's petition and her expert's report. For purposes of our review of the adequacy of a medical expert report under Chapter 74, however, we take the allegations in the report as true. *Marino v. Wilkins*, 393 S.W.3d 318, 320 n. 1 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

objected to the report and moved to dismiss this cause, asserting that the report is (1) conclusory and inadequate regarding the standard of care and breach and (2) insufficient as to causation. The trial court overruled those objections, and Cedar Crest appealed.

## APPLICABLE LAW

The plaintiff in a medical liability case must supply an expert report that is a good-faith effort to provide a fair summary of the expert's opinions. Tex. Civ. Prac. & Rem. Code § 74.351(l), (r)(6); *American Transitional Care Ctrs., Inc. v. Palacios*, 46 S.W.3d 873, 878-79 (Tex. 2001). The report need not marshal all of a plaintiff's proof, but must include the expert's opinion on each of the statutory factors. *Palacios*, 46 S.W.3d at 878; *Walgreen Co. v. Heiger*, 243 S.W.3d 183, 185-86 (Tex. App.—Houston [14th Dist.] 2007, pet denied). The factors include the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). The trial court must dismiss the cause against the health-care provider if the plaintiff fails to file a report. *Id.* § 74.351(b).

To constitute a good-faith effort, the report must (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude the claims have merit. *Palacios*, 46 S.W.3d at 879. A report is not a good-faith effort if it omits any of the statutory requirements or merely states the expert's conclusions about the standard of care, breach, and causation. *Fortner v. Hospital of the Sw., LLP*, 399 S.W.3d 373, 379 (Tex. App.—Dallas 2013, no pet.).

3

To adequately identify the standard of care, an expert report must set forth specific information about what the defendant should have done differently. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 226 (Tex. 2018). While the Act requires only a "fair summary" of the standard of care and how it was breached, even a fair summary must set out what care was expected, but not given. *Palacios*, 46 S.W.3d at 880. Mere reference to general concepts regarding assessment, monitoring, and interventions are insufficient as a matter of law. *Id.* at 873; *Regent Health Care Ctr. of El Paso, L.P. v. Wallace*, 271 S.W.3d 434, 441 (Tex. App.—El Paso 2008, no pet.).

The expert must make a good-faith effort to explain, factually how proximate cause will be proven. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). Proximate cause has two components: (1) foreseeability and (2) cause-in-fact, though the report need not use those words. *Id.* To establish a causal relationship between the injury and the defendant's negligent act or omission, the expert report must show that the defendant's conduct was a substantial factor in bringing about the harm and, absent this act or omission, the harm would not have occurred. *Id.*; *Mitchell v. Satyu*, No. 05-14-00479-CV, 2015 WL 3765771, at *4 (Tex. App.—Dallas June 17, 2015, no pet.) (mem. op.). The report must explain to a reasonable degree of medical probability how and why the breach of the standard of care caused the injury. *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010). An expert may show causation by explaining a chain of events that begins with a defendant health-care provider's negligence and ends in injury to the plaintiff. *Mitchell*, 2015 WL 3765771, at *4.

The expert must explain the basis of his statements to link his conclusions to the facts. *Zamarripa*, 526 S.W.3d at 460. An expert's statement or opinion is conclusory when: (1) he asks the jury to take his word that his opinion is correct but offers no basis for his opinion;

4

or (2) he offers only his word that the bases offered to support his opinion actually exist or support his opinion. *Windrum v. Kareh*, 581 S.W.3d 761, 769 (Tex. 2019) (discussing expert testimony) (citing *Jelinek*, 328 S.W.3d at 536 (discussing expert report)).

We review a trial court's ruling on an expert report's sufficiency for abuse of discretion. *Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Jelinek*, 328 S.W.3d at 539. This Court may not substitute its judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). The trial court has no discretion in determining what the law is or applying the law to the facts. *In re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex. 2001) (orig. proceeding). In analyzing an expert report's sufficiency under this standard, we consider only the information contained within the four corners of the report. *Abshire*, 563 S.W.3d at 223. We must view the report in its entirety, rather than isolating specific portions or sections, to determine whether it includes the required information. *Baty*, 543 S.W.3d at 694.

## DISCUSSION

Cedar Crest contends that the trial court abused its discretion by overruling Cedar Crest's objections to Duhigg's report and denying Cedar Crest's motion to dismiss because the report was deficient in (1) its description of the standard of care and the manner in which Cedar Crest breached it, and (2) its conclusory nature and failure to satisfy the requirements of Texas Civil Practice and Remedies Code Section 74.351.

**A.** **The report inadequately describes the standards of care and their breach.**

Buentello asserts that Duhigg's report supplied the necessary information regarding the standards of care and their breach with the following statements:

- Following a psychological trauma, the Standard of Care is to assist the individual in achieving a sense of safety, and either prevent the onset or mitigate the results of acute stress disorder symptoms or post-traumatic stress disorder symptoms. Failing to do this increases the likelihood of the onset of acute stress disorder, and subsequently posttraumatic stress disorder.

- Following the strangulation of a child that causes tissue injury sever[e] enough to bruise the neck while in a psychiatric facility, in the context of ongoing pain, the Standard of Care is to have the child medically evaluated in the emergency department, where providers have more experience evaluating, diagnosing, and treating medical injuries.

- When the determination is made for a child in a psychiatric acute care hospital facility to be evaluated in the emergency department following strangulation violent enough to damage structures of the throat, the Standard of Care is to send that child to the emergency department in a timely fashion, since early identification of physical damage to the structures of the throat is associated with better medical outcomes, whereas delays in evaluating, diagnosing and treating physical damage to structures of the throat is associated with poorer outcomes and worse injuries.

- [D.B.J.] should have received an adequate assessment and treatment for his acute stress symptoms following the psychological injury sustained while a patient at Cedar Crest Hospital and Residential Treatment Center. [D.B.J.] should have been sent from the Cedar Crest Hospital and Residential Treatment Center to the emergency department in a timely manner after the clinical determination that an emergent evaluation of physical injury resulting from the physical and sexual assault was indicated.

- The nursing staff of Cedar Crest Hospital and Residential Treatment Center breached the standard of care by failing to send [D.B.J.] to the emergency department in a timely way, and Cedar Crest Hospital and Residential Treatment Center breached the standard of care by not providing therapeutic treatment for the psychological injury sustained during the hospital stay by [D.B.J.].

6

The breached standards of care discernible in these statements are that Cedar Crest should have (1) performed an adequate assessment and treatment for D.B.J.'s acute stress symptoms, (2) taken D.B.J. to the emergency room timely, and (3) provided therapeutic treatment for the psychological injury sustained during D.B.J.'s stay.

Buentello contends that the report is adequate for the stage of litigation, asserting that discovery is stayed and that summary-judgment level proof need not be marshaled in the report.

Duhigg's report resembles those found not to provide a fair summary of the standard of care and its breach. *See Kingwood Pines Hosp., LLC v. Gomez,* 362 S.W.3d 740, 747-49 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In that case, the Houston Court of Appeals wrote, "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given." *Id.* 747-48 (citing *Palacios*, 46 S.W.3d at 880). A minor admitted to a hospital for evaluation of a psychiatric condition was molested by her roommate. *Id.* at 743. The appeals court held that the trial court abused its discretion by finding adequate the assertions in the expert's original and supplemental reports that the hospital should "supervise closely and house safely" its patients and not "allow any harm to occur to any of its patients" and the conclusion that the hospital breached these obligations by not using "any of the number of measures available" or providing "the most basic supervision." *Id.* at 748-50. The court of appeals held that the reports deficiently described the standard of care because they merely concluded "that appellants did not provide a safe and secure environment for V.G., but do not specify how this should have been accomplished." *Id.* at 749. The court also held that "whether a defendant breached the standard of care cannot be determined without 'specific information

7

about what the defendant should have done differently.'" *Id.* at 750 (citing *Palacios*, 46 S.W.3d at 880). The court of appeals remanded to the trial court to consider whether the plaintiff should receive an extension of time to file an amended report. *Id.* at 751; *see also* Tex. Civ. Prac. & Rem. Code § 74.351(c).

By contrast, the Texas Supreme Court held that an expert report adequately addressed the standard of care for assessing a patient when the report stated as follows:

> The standard of care is to document a complete and accurate assessment including:
>
> a. A health history consisting of longstanding medical issues;
>
> b. Focused assessments based on the patient's primary complaint;
>
> c. Pain assessments consisting of intensity of the pain, location of the pain, interventions implemented to alleviate the pain and follow re-assessment to evaluate the effectiveness of the intervention(s);
>
> d. Assessments with any change in level of care or transfer of care between different departments; and
>
> e. Providing information in a timely manner.

*Abshire*, 563 S.W.3d at 227.[2] The supreme court determined that the report was sufficient despite not designating a specific documentary procedure that should have been used; such detail is not required in the report. *Id.* The Texas Supreme Court reversed the holding by the Beaumont Court of Appeals that the report was inadequate, concluding that the trial court correctly denied the motion to dismiss the cause for an inadequate report. *Id.*

---

[2] There were three reports—two primary and one supplemental—in the case. *Abshire v. Christus Health Se. Texas*, 563 S.W.3d 219, 227 (Tex. 2018). Because the detail of which report contained what aspect the Texas Supreme Court found adequate does not affect our analysis, we will for simplicity refer to the various reports as if they were one report.

8

Unlike the report in *Abshire*, Duhigg's report fails to set out the measures that Cedar Crest should have taken in assessing, treating, and transporting D.B.J. Duhigg's assertions that the hospital must provide "adequate" assessment and treatment, "timely" transport an assaulted patient to emergency care, and "therapeutic treatment" do not inform either Cedar Crest or the trial court what the applicable standards are other than that Cedar Crest failed to meet those undefined standards. Duhigg's report is vague and conclusory like the report held inadequate in *Kingwood*. *See* 362 S.W.3d at 748-50.

We conclude that the trial court abused its discretion by finding that Duhigg's report provided a fair summary of the standard of care and how it was breached and by overruling Cedar Crest's objection to the report. We sustain that part of Cedar Crest's issue attacking the adequacy of the expert report.

## B.     The report inadequately describes causation.

Buentello contends that Duhigg's report satisfies the requirements concerning causation with the following statements:

> Based upon reasonable medical probability, the above noted deviations from the accepted Standard of Care by agents of Cedar Crest Hospital and Residential Treatment Center resulted in and are a proximate cause of the injuries and damages sustained by [D.B.J.] as follows:
>
> - On 09/20/2017 [D.B.J.] sustained medical and psychological injuries as a result of being physically and sexually assaulted by another patient, while hospitalized at Cedar Crest Hospital and Residential Treatment Center.
>
> - Despite the determination being made by a physician assistant acting as an agent of Cedar Crest Hospital and Residential Treatment Center to have [D.B.J.'s] physical injuries emergently evaluated in the emergency department, agents of Cedar Crest Hospital and Residential Treatment Center did not arrange for him to be transported to the emergency department until the following day. Responding to [D.B.J.'s] physical trauma in a timely

9

manner would have helped to ensure a sense of safety and self-worth, whereas the breach in standard of care increased the likelihood of developing a secondary mental and emotional impairment, such as posttraumatic stress disorder.

- Despite knowing the details of the psychological trauma of experiencing a physical and sexual assault at age 6, agents of Cedar Crest Hospital and Residential Treatment Center breached the standard of care by failing to respond to [D.B.J.'s] acute stress symptoms with a therapeutic treatment approach. Had Cedar Crest Hospital and Residential Treatment Center responded to his acute stress symptoms in a therapeutic way consistent with the standard of care, it would be less likely that [D.B.J.] would develop posttraumatic stress disorder.

- The breaches of the standard of care by agents of Cedar Crest Hospital and Residential Treatment Center during the hospitalization following the physical and sexual assault he sustained in the hospital further contributed to the psychological injuries sustained by [D.B.J.].

In *Kingwood*, the court of appeals held that the trial court abused its discretion by finding adequate an expert report that provided as follows regarding causation:

- In medical probability, V.G. would be expected to suffer significant psychological damage especially from sexual molestation occurring to her in a treatment setting. The proximate cause of this was the hospital's failure as well as that of . . . Ms. Bassett to meet the standard of care.

- Had [V.G.] and the other patients been properly supervised, [V.G.] would not have been assaulted.

362 S.W.3d at 750. The court of appeals held that the report inadequately described the causal relationship between the hospital's failures to meet the standards of care and the plaintiff's injuries because the expert did not explain how and why the failures resulted in molestation or what constituted proper supervision. *Id.*

By contrast, the *Abshire* report found sufficient in *Abshire* provided more detail regarding causation. 563 S.W.3d at 224-25. The report first described the damages caused:

10

"The harm/injury that resulted from the substandard care provided by [Christus] was the exacerbation of an undiagnosed vertebral fracture that lead [sic] to a spinal cord injury resulting in paraplegia and bowel and bladder incontinence." *Id.* at 224. The report then linked the failure to meet the standard of care with the damages:

> Failure of the nursing staff to document a complete and accurate assessment resulted in a delay in proper medical care (ie. [sic] the ordering of imaging studies and protection of the spine.) . . . . [H]ad the symptomology that Ms. Abshire was experiencing been appropriately linked to the [OI] diagnosis then she could have been admitted to the hospital on absolute bed rest, imaging studies such as a CT or MRI of her back ordered, then treatment started to preserved [sic] the integrity of the spine . . . .
>
> The hospital staff clearly ignored signs and symptoms of spinal injury and kept investigating the same areas over and over with no relief to the patient. . . . This failure on the part of the hospital staff allowed the spinal injury to progress to the point of paraplegia.
>
> Failure to consider the patient's prior relevant medical history was mostly [sic] likely a cause of the hospital staff's focus on the potential cardiac element of Ms. Abshire's pain.... Had they had a complete medical history they would have known to examine other areas and that this patient had a high probability of a compression fracture. The lack of proper documentation in the patient's medical record lead [sic] to a delay in treatment of Ms. Abshire's compression fracture which in medical probability lead [sic] to paralysis.

*Id.* at 224-25. The Texas Supreme Court concluded that the report provided a straightforward link between the breach of the standard care alleged and the injury; it reversed the holding by the Beaumont Court of Appeals that the report was inadequate. *Id.* at 225, 227.

Duhigg's report resembles the inadequate report from *Kingwood* rather than the adequate report from *Abshire*. It is vague about what injuries D.B.J. suffered from Cedar Crest's acts or omissions, and does not explain if or how the injuries are distinct from those attributable to the assault. The report described abrasions, bruising, and petechiae, as well as "psychological

injuries" as a result of the assault. But the assertion that Cedar Crest's failures "increased the likelihood of developing a secondary mental and emotional impairment, such as posttraumatic stress disorder" does not show a link between Cedar Crest's actions or omissions and D.B.J.'s mental or emotional conditions. The report does not explain how Cedar Crest's acts or omissions were a substantial factor in bringing about a harm and that, but for the act or omission, the harm would not have occurred. *See Zamarripa*, 526 S.W.3d at 460.

We conclude that the trial court abused its discretion by finding that Duhigg's report provided a fair summary of causation and by overruling Cedar Crest's objection to the report. We sustain that part of Cedar Crest's issue attacking the adequacy of the expert report.

## C. Remand, not dismissal, is appropriate.

Cedar Crest urges that the appropriate remedy is for this Court to dismiss Buentello's cause of action. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b). Because the trial court did not sustain Cedar Crest's objections to the report, however, it did not consider Buentello's request that, if the trial court found the report inadequate, it grant her a thirty-day extension of time to file a supplemental report to cure any deficiencies. *See* Tex. Civ. Prac. & Rem. Code §74.351(c). Both parties have requested these actions from this Court.

A thirty-day extension to cure deficiencies may be granted if: (1) the report is served by the statutory deadline; (2) if the report contains the opinion of an individual with expertise that the claim has merit; and (3) if the defendant's conduct is implicated. *Scoresby v. Santillan*, 346 S.W.3d 546, 557 (Tex. 2011). "[A] document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." *Id.* at 549. Duhigg's report meets that standard

12

and there is no assertion that it was untimely filed. Similar to Duhigg's report, the report in *Scoresby* described the injury, ascribed it to the physician's breach of the standard of care, and stated that their breach caused the injuries. *Id.* at 557. Texas Supreme Court in *Scoresby* held that, although the plaintiff's report was deficient because it did not state the standard of care and only implied that it was inconsistent with the Physicians' conduct, the plaintiff should have the opportunity to cure the deficiencies because "there is no question that in [the expert's] opinion, Santillan's claim against the Physicians has merit." *Id.*

Similarly, Buentello's expert report left no question that the expert believed her claim against Cedar Crest has merit. We decline to dismiss this cause for failure to file an adequate report and conclude that the trial court should be permitted the opportunity to consider whether to dismiss this cause or to grant a thirty-day extension to cure the deficiencies in the report. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c); *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008).

## CONCLUSION

We reverse the trial court's order denying HMIH Cedar Crest, LLC d/b/a Cedar Crest Hospital & RTC's Objections to Chapter 74 Expert Report of Daniel Duhigg, DO, MBA, because we agree that the trial court abused its discretion when it found the expert report complied with statutory requirements for expert reports under Texas Civil Practice and Remedies Code section 74.351. Rather than dismissing the cause, we remand for the trial court to consider whether to dismiss the cause or to grant Buentello's request for a thirty-day extension to cure deficiencies in the report, as well as for other proceedings consistent with this opinion.

13

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Kelly
  Dissenting opinion by Justice Baker

Reversed and Remanded

Filed:   March 4, 2022

14